495 So.2d 797 (1986)
Charles R. REYHER, Appellant,
v.
Ruth Ann REYHER, Appellee.
No. 85-1274.
District Court of Appeal of Florida, Second District.
September 19, 1986.
*798 Michael L. Volpe of Monaco, Cardillo, Keith & Volpe, P.A., Naples, for appellant.
John R. Asbell, Daniel A. Gregory of Asbell, Hains, Doyle & Pickworth, Naples, for appellee.
RYDER, Judge.
Ruth Ann Reyher filed a petition for dissolution of marriage with Charles Reyher. The parties were married in 1956 and have no children.
At the time of their marriage, the husband was an airline captain with TWA. When his employment with TWA commenced in 1947, the company had a small retirement plan. A formal plan, Retirement Plan for Pilots of Trans World Airlines, Inc. ("retirement plan"), was adopted in 1950 and the husband became a member then. He was given credit for his service back to the date of his hire in 1947. TWA paid for the entire cost of the retirement plan by contributing an amount equal to 4% of the husband's monthly earnings.
In addition to the retirement plan, the husband receives income from the Trust Annuity Plan for Pilots of Trans World Airlines, Inc. ("annuity plan"). The annuity plan was adopted by TWA in December of 1954 and provided for a contribution by TWA of 11% of the employee's current earnings. The plan also allows for contributions by the employee, but the husband did not testify at trial as to whether he contributed to the annuity plan.
The husband retired on July 21, 1982 at the age of sixty. He now receives from the retirement plan the sum of $2,835.08 per month. In addition, he receives a monthly payment from the annuity plan, the amount of which varies quarterly depending upon the stock market, but at the time of trial was $1,450.00. The husband designated the wife as the irrevocable joint annuitant on both the fixed dollar retirement plan and on the annuity plan. Because of such designation on the husband's plans, the wife will receive 50% of the husband's retirement income upon the husband's *799 death regardless of their marital status.
The parties have recently sold their marital residence for approximately $149,705.07. The net proceeds from the sale of this property were held in a trust account. The parties stipulated and agreed that each would be permitted to withdraw individually the sum of $56,000.00 from this sale, with the sum of $40,975.00 remaining on deposit in the trust account. Other marital assets included a thirty-five foot Hallberg Rassy sailboat which was purchased in 1977 for $50,000.00. It has a current market value of approximately $65,000.00. Also, the parties had a membership in the Naples Yacht Club which cost approximately $7,500.00.
The circuit court heard the merits of this cause of action at trial and subsequently ordered the marriage dissolved. The order included an equal division of the funds in the trust account (proceeds from the sale of the marital house), an award to the wife of one-half ownership interest in the sailboat, and an award to the wife of one-half ownership of the husband's interest in the retirement and annuity plans. The court specifically mandated that the payments from these plans be made directly to Ruth Reyher from each plan's administrator. The order implies that the plans were viewed by the trial court as a marital asset (i.e., property right). That implication is wholly supported by the record. Mrs. Reyher's counsel characterized the plans as property rights in the petition for dissolution of marriage and argued them as such in the summation of the trial. Indeed, the trial court stated during his oral recitation of his order: "I consider this to be ... part of the mutual assets accrued during the marriage."
The husband appealed the final judgment of dissolution of marriage, raising two issues. First, he alleged that the trial court erred in considering the plans as marital assets and as such subject to equitable distribution. The Florida Supreme Court has, of late, decided this issue squarely against the husband. Diffenderfer v. Diffenderfer, 491 So.2d 265 (Fla. 1986).
The husband's second issue presents a question that apparently has not been addressed yet in a Florida court vested with appellate jurisdiction: In making an equitable distribution of a pension plan as authorized by Diffenderfer v. Diffenderfer, 491 So.2d 265 (Fla. 1986), should the trial court exclude the premarital contributions to the plan?
Although no decision has addressed this issue head-on, a few have decided related issues. Summers v. Summers, 491 So.2d 1270 (Fla. 2d DCA 1986) (this court remanded case to trial court instructing it to consider only vested amount of pension in award of lump sum alimony); Howerton v. Howerton, 491 So.2d 614 (Fla. 5th 1986) (fifth district remanded case to trial court instructing it to consider only pension benefits acquired during marriage, not "benefits acquired after the dissolution of marriage") (emphasis in original); Smith v. Smith, 487 So.2d 339 (Fla. 4th DCA 1986) (fourth district remanded case to trial court instructing it to consider in equitable distribution the $175,000.00 contributions to the pension plan made during the four-year marriage). Earlier cases have skirted the issue also. Clarke v. Clarke, 443 So.2d 486, 487 (Fla. 2d DCA 1984) ("the right to the great bulk [of the pension plan] was built up during the ninteen-year marriage"); Bradley v. Bradley, 385 So.2d 101, 102 (Fla. 5th DCA 1980) ("a large portion of the annuity being earned during the fifteen years of marriage"). The supreme court alludes to the issue in Diffenderfer by stating: "To the extent acquired during the marriage, the expected benefits are a product of marital teamwork." Diffenderfer at 282. The issue was not raised in Diffenderfer. It appears from the facts recited in that opinion that none of the pension contributions occurred prior to the marriage. Id. at 281.
In the case at hand, contributions to the husband's retirement plan occurred over a period of thirty-five years (including the credit given by TWA back to 1947). Contributions *800 to the annuity plan covered a period of twenty-eight years. The Reyhers were married for twenty-six of the years covered by the contributions. The contributions to the retirement plan accumulated for nine years prior to the marriage and contributions to the annuity plan accumulated for two years. The husband asserts on appeal that "no less than one third" of his current benefits can be attributed to the premarital contributions. While it is true the premarital contributions amount to over one-fourth of the period of time contributions were made, that is not the sole factor in determining the percentage of current benefits attributable to premarital contributions. Other factors in this case include each year's pay (since contributions are a percentage of yearly earnings) and appreciation over the years.
We hold that premarital contributions, when proven, should be excluded from an equitable distribution of pension plans. In implementing our holding, the trial court should follow the procedure set out below. We note initially that the procedure is different from the formula mandated in Landay v. Landay, 429 So.2d 1197 (Fla. 1983) and Ball v. Ball, 335 So.2d 5 (Fla. 1976) because those cases dealt with real property owned as tenants by the entireties.
The analysis in the equitable distribution of pension plans begins with 100% ownership (i.e., beneficial interest) by one party. (This is more than mere "title" as in Hamm v. Hamm, 492 So.2d 467 (Fla. 1st DCA 1986). Absent any proof of premarital contributions to the plan, the trial court can treat the whole amount as a marital asset. Diffenderfer. In order to exclude any premarital contributions, the "owner" must prove the value of the premarital contributions (and appreciation of that value, if any). A few ways of arriving at value are discussed in Diffenderfer, and we follow that decision in refusing to mandate a specific valuation technique. Id. at 282. Needless to say, the method for valuing the premarital portion must be the same method in valuing the whole pension. Once valued, the court can equitably distribute as marital assets the pension plan minus the proven premarital portion.
The procedure set out above will allow the trial court to equitably distribute pension plans as marital property without awarding the non-pensioned party a windfall of half the premarital value of the plans. We should note that even though the premarital value of the plan is excluded from the equitable distribution, the value "may certainly bear on the employee spouse's ability to pay" permanent or rehabilitative alimony. Id. To rule differently would go against the principles outlined in both Diffenderfer and Canakaris.[1]
We reverse the trial court's judgment and remand for proceedings consistent with the supreme court's Diffenderfer opinion and this opinion.
Reversed and remanded with instructions.
SCHEB, A.C.J., and SANDERLIN, J., concur.
NOTES
[1] Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980).