591 So.2d 275 (1991)
Richard E. CAMERON, Appellant/Cross-Appellee,
v.
Phyllis Y. CAMERON, Appellee/Cross-Appellant.
No. 90-852.
District Court of Appeal of Florida, Fifth District.
November 29, 1991.
Rehearing Denied January 9, 1992.
*276 Benjamin Y. Saxon of Law Offices Benjamin Y. Saxon, P.A., Melbourne, for appellant/cross-appellee.
Joan H. Bickerstaff, Melbourne, for appellee/cross-appellant.
W. SHARP, Judge.
Richard Cameron appeals and Phyllis Cameron cross-appeals from a final judgment of dissolution. The court awarded the former wife, by way of equitable distribution, one-half of various real estate and rental properties acquired by the parties during the marriage either in joint names or in the former husband's sole name, and it awarded the husband one-half interest in rental property so acquired in the former wife's name. It denied the former wife any equitable distribution of properties owned by the husband prior to the marriage, although they had admittedly appreciated greatly in value due to investment of marital labor and income (primarily, but not exclusively, the former husband's), and denied her any alimony. It also awarded the former wife costs and $3,500 as a contribution to her attorney's fees. We affirm.
The parties' primary contention in this case is the interpretation and application of the parties' prenuptial agreement. The trial court heard conflicting testimony concerning whether Richard fairly disclosed the extent of his net worth and assets, and whether Phyllis fully understood the provisions of the agreement, consistent with the requirements of Del Vecchio v. Del Vecchio, 143 So.2d 17 (Fla. 1962). The court found the former wife should be bound by the prenuptial agreement. We cannot overturn this finding based on the record in this case. Jackson v. Seder, 467 So.2d 422 (Fla. 4th DCA), rev. denied, 479 So.2d 118 (Fla. 1985).
The trial court also found that properties acquired after the marriage were "not subject" to the prenuptial agreement. Both parties take issue with the court's interpretation of the agreement. The introductory paragraph recites:
[I]t is the intention of Phyllis Y. Karr to waive, relinquish and bar her rights of dower and other statutory rights and interests as wife or widow of Richard E. Cameron in and to real, personal and mixed property owned by Richard E. Cameron at the present time or to be acquired by him in the future. (emphasis supplied).
Paragraph 3 deals with the former wife's claims as a widow to dower, homestead and a share of Richard's estate, if he died before her. Paragraph 7 specifically covers termination of the marital relationship by a dissolution. It provides:
A. Each agrees that the other may keep and retain what was his or her own property before marriage, and each agrees to execute, in favor of the other, such quitclaim deeds or other release or conveyance as may be required to carry out the purposes hereof. (emphasis supplied)
B. Richard Cameron will absorb any expenses in relation to alterations to the residence incurred by the parties.
C. Each party hereto expressly relinquishes any claim for alimony or support, each against the other.
The record in this case discloses that at the time the parties entered into the prenuptial agreement, Richard had assets totalling $403,504.50 and Phyllis' assets totalled $40,750. Their marriage lasted approximately ten years. Each had been previously married and had children by prior marriages. At the time of the dissolution, Phyllis was sixty years old and Richard was forty-nine years old.
During the marriage, Phyllis left her former employment as a loan officer with a bank, primarily because Richard was a long-time customer of the bank and the bank management thought her continued employment after their marriage would be improper. She began her own real estate *277 company, and enjoyed financial success while Richard's various businesses used her firm as a listing broker. However, in the final year of marriage, when their business as well as marital relationship was ending, her salary from her real estate business was minimal  $7,844 for the first five months of 1989, and its future financial success was uncertain.
During the marriage, Richard's plumbing business (Cameron Brothers Plumbing Co., Inc.) did well. Its value grew from $100,000 to $260,000. A nursery business, Cameron Creek Farms, grew to $65,000 in value. Other real property investments prospered. Richard's total worth at the time of dissolution was approximately 1.1 to 1.5 million dollars. Although his plumbing business income dropped in 1989, he still received $1,600 per week from salary, and rental and mortgage income from various real estate investments.
The parties kept their various business incomes separate, but they engaged in a series of successful real estate investments. The pattern was to acquire unimproved properties by refinancing and borrowing on others. Then, they improved the property and either rented or sold them. The newly acquired properties were sometimes put into the parties' joint names, and sometimes were left in Richard's or (in one instance) Phyllis' sole name. Both parties signed mortgage notes and deeds on all the properties being financed or leveraged. Richard testified this was required by the lenders.
The mortgage and other payments were primarily paid out of Richard's earnings, or other real estate sources (i.e., rentals and additional loans). Phyllis testified she advised Richard concerning what property to acquire, and how to make the most out of their investments. She also worked in the plumbing business, and helped to manage and rent the rental properties. Many properties had been acquired, financed, sold, and the proceeds reinvested in other properties during the marriage. Neither party tried to trace the source of any except a few properties Richard had owned before marriage.
Essentially, the trial court first interpreted the prenuptial agreement and then applied it to these parties' ten years of complex dealings with a myriad of real estate investments and acquisitions. It concluded that the prenuptial agreement (based on the former wife's testimony and the ambiguity of the prenuptial agreement) did not encompass marital assets acquired after the parties' marriage. Paragraph 7 speaks only of shielding from the other party his or her assets owned prior to marriage.[1] Phyllis testified she understood the primary point of the agreement was to set aside and shield Richard's then successful plumbing company. She thought she would be entitled to share in the success of the real estate investments they engaged in after their marriage. This appears to be a plausible interpretation of this agreement, based on this record, and as an appellate court we should affirm. Neale v. Neale, 360 So.2d 440 (Fla. 3d DCA 1978), cert. denied, 368 So.2d 1371 (Fla. 1979).
Phyllis argues that the trial court erred by not equitably distributing all the parties' marital assets: specifically, the appreciation in value of Richard's businesses, in real estate owned prior to marriage, and in the Orange Blossom Trail property, which was owned by Richard's plumbing company prior to marriage, and upon which the parties constructed an office building. We cannot say the trial court erred in this regard. All of these properties were owned by Richard prior to marriage, or by his solely owned corporation. If paragraph 7A. is to effectively shield such properties from Phyllis' claims, it must also include any appreciation in value.
Richard argues none of the properties acquired after the parties' marriage either in joint names or in one party's sole name *278 should be subject to equitable distribution, although they were admittedly acquired and improved with marital funds, and marital work efforts. In categorizing property as a marital asset, it really does not matter which spouse's income or work efforts were involved in its acquisition. Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980); Webb v. Webb, 498 So.2d 1059 (Fla. 5th DCA 1986).
As explained above, the trial court's interpretation of the prenuptial agreement appears to be a reasonable one. Applying that interpretation, the court distributed one-half of the properties acquired after marriage with marital income and work efforts, to Phyllis, and one-half to Richard. This appears to be an "equitable distribution" and neither party argues it was not. Kittinger v. Kittinger, 582 So.2d 139 (Fla. 5th DCA 1991); Mahaffey v. Mahaffey, 401 So.2d 1372 (Fla. 5th DCA 1981).
We find no error in the trial court's partial award of attorney's fees and costs and find that it was also within the trial court's discretion.
AFFIRMED.
HARRIS and PETERSON, JJ., concur.
NOTES
[1] At the time the parties married, in April of 1979, the concept of equitable distribution was being developed, but had not yet been formally pronounced, in Florida case law. Since this dissolution proceeding was filed in February of 1988, the equitable distribution statute (effective October 1, 1988) would not be applicable, and the case is governed by Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980) and its progeny.