758 So.2d 1181 (2000)
Laura Catherine Davis WITOWSKI, Appellant,
v.
Daniel James WITOWSKI, Appellee.
No. 99-00499.
District Court of Appeal of Florida, Second District.
May 5, 2000.
*1182 Jane H. Grossman, St. Petersburg, for Appellant.
Richard R. Logsdon, Clearwater, for Appellee.
DAVIS, Judge.
Laura Catherine Davis, f/k/a Laura Catherine Witowski, appeals the trial court's final order enforcing an antenuptial agreement. The trial court ruled that the agreement barred her from sharing the marital portion of her former husband's United States Postal Service retirement fund. We reverse.
The wife and husband married on May 24, 1985. The wife filed a petition for dissolution of marriage on October 24, 1997, after twelve and one-half years of marriage. The husband began working for the United States Postal Inspectors before the marriage. He entered the marriage with a vested ownership in a United States Postal Service retirement fund, valued at approximately $25,000. At the time of trial, he earned $94,000 per year. The wife stayed at home to care for the minor children.
Before the marriage, they signed an antenuptial agreement, which provided in pertinent part:
(b) Daniel James Witowski has specifically disclosed to Laura Catherine Davis that he has the following assets and liabilities:
. . .
Vested ownership in the United States Postal Service retirement fund of a value of approximately $25,000....
. . .
WHEREAS the parties desire as a condition to and in advance of their marriage to provide for the settlement of their property and financial interest in the event their marriage becomes dissolved, the parties therefore agree as follows:
1. As between the parties, and in the event of dissolution of their marriage, Daniel James Witowski shall retain all right, title, and interest in and possession of whatever assets listed in (b) above which he may still own at the time of such dissolution of marriage.
2. In the event of dissolution of their marriage, the parties shall each retain their own respective personal clothing and belongings, but shall otherwise equally divide all assets acquired during their marriage....
Paragraph (b) specifically lists the United States Postal Service retirement fund as an asset of the husband.
*1183 The trial court bifurcated the dissolution proceedings. First, on September 24, 1998, it addressed equitable distribution and spousal support. Second, on October 9, 1998, the trial court entered an order relating solely to the issue of the validity of the antenuptial agreement and the trial court's interpretation of certain language relating to the husband's pension.
The trial court found that although the antenuptial agreement was inartfully drafted, the parties clearly attempted to exempt certain assets from equitable distribution should their marriage fail. The trial court ruled that the Witowskis' antenuptial agreement protected the entire retirement fund, irrespective of enhancement during the marriage. The trial court entered its final judgment of dissolution of marriage on November 10, 1998.

I. MARITAL CONTRIBUTION TO PENSION
At the outset, we observe that section 61.075, Florida Statutes (1997), governs equitable distribution in dissolution proceedings. It provides, in pertinent part:
(5)(a) "Marital assets and liabilities" include:
1. Assets and liabilities incurred during the marriage, individually by either spouse or jointly by them;
2. The enhancement in value and appreciation of nonmarital assets resulting either from the efforts of either party during the marriage or from the contribution to or expenditure thereon of marital funds or other forms of marital assets, or both;
3. Interspousal gifts during the marriage;
4. All vested and nonvested benefits, rights, and funds accrued during the marriage in retirement, pension, profit-sharing, annuity, deferred compensation, and insurance plans and programs....
. . .
(b) "Nonmarital assets and liabilities" include:
1. Assets acquired and liabilities incurred by either party prior to the marriage, and assets acquired and liabilities incurred in exchange for such assets and liabilities;
2. Assets acquired separately by either party by noninterspousal gift, bequest, devise, or descent, and assets acquired in exchange for such assets;
3. All income derived from nonmarital assets during the marriage unless the income was treated, used, or relied upon by the parties as a marital asset; and
4. Assets and liabilities excluded from marital assets and liabilities by valid written agreement of the parties, and assets acquired and liabilities incurred in exchange for such assets and liabilities.
. . .
(7) All assets acquired and liabilities incurred by either spouse subsequent to the date of the marriage and not specifically established as nonmarital assets or liabilities are presumed to be marital assets and liabilities. Such presumption is overcome by a showing that the assets and liabilities are nonmarital assets and liabilities.
Id. (emphasis added).
Pursuant to subsections 61.075(5)(a)2 and 4 above, the marital increase in a spouse's pension is a marital asset subject to equitable distribution, unless a valid written agreement or other proof specifically establishes it as a nonmarital asset. As a corollary, the pension plan balance prior to the marriage, and its passive income or increases, are nonmarital assets. See Griffiths v. Griffiths, 563 So.2d 773, 774 (Fla. 3d DCA 1990) (citing Diffenderfer v. Diffenderfer, 491 So.2d 265, 267 (Fla.1986)); see also Straley v. Frank, 612 So.2d 610, 612 (Fla. 2d DCA 1992) (passive appreciation from inflation or fortuitous market forces not marital asset).
Reyher v. Reyher, 495 So.2d 797 (Fla. 2d DCA 1986), sets forth the method of analysis *1184 for equitable distribution of pension plans:
The analysis in the equitable distribution of pension plans begins with 100% ownership (i.e., beneficial interest) by one party.... In order to exclude any premarital contributions, the "owner" must prove the value of the premarital contributions (and appreciation of that value, if any). A few ways of arriving at value are discussed in Diffenderfer, and we follow that decision in refusing to mandate a specific valuation technique. Id. at 282. Needless to say, the method for valuing the premarital portion must be the same method in valuing the whole pension. Once valued, the court can equitably distribute as marital assets the pension plan minus the proven premarital portion.
Id. at 800 (citing Diffenderfer, 491 So.2d at 267).
Here, the trial court relied on Cameron v. Cameron, 591 So.2d 275 (Fla. 5th DCA 1991), in its written order declaring the entire Witowski pension fund to be a marital asset. In Cameron, the Fifth District held that an antenuptial agreement exempted from equitable distribution not only the husband's premarital property, but buildings later erected on the property with marital funds. See id. at 276-77. The antenuptial agreement in Cameron stated that each party "may keep and retain what was his or her own property before marriage." Id. at 276. Cameron is distinguishable from the instant case because unlike the antenuptial agreement here, the agreement in Cameron specifically addressed future enhancement. See id. at 276. In its introductory paragraph, the Cameron agreement delineated the wife's intentions to "waive, relinquish and bar her rights ... to property owned by Richard E. Cameron at the present time or to be acquired by him in the future." Id. at 276 (emphasis added). Thus, the wife in Cameron gave up any equitable distribution of marital contributions to the husband's premarital property. In contrast, the antenuptial agreement here is silent as to any marital enhancement or future contribution to the husband's retirement account, and therefore does not specifically protect marital contributions.
Like the Fifth District in Cameron, the Fourth District, in Timble v. Timble, 616 So.2d 1188 (Fla. 4th DCA 1993), held the antenuptial agreement protected the stock in question because of the specific language in the agreement:
Husband is given full rights, liberty, authority and as fully in all respects the same as he would have if not married to use, enjoy, manage, convey, bequeath, mortgage, grant, sell, invest, reinvest, alienate and dispose of all and every part of any stock or other interest, or security he owns ... or may hereafter acquire in Headco Industries.
Id. at 1189 (emphasis added). Again, as in Cameron, the wife in Timble relinquished any possibility of equitable distribution of marital contributions to the husband's stock.
In Wilson v. Moore, 929 S.W.2d 367 (Tenn.Ct.App.1996), an antenuptial agreement protected the parties' separate premarital property and "all increase or addition thereto," as well as gifts or inheritances during the marriage. The agreement specifically stated that jointly-acquired property would be marital. See id. at 372. During the marriage, the husband invested money directly from his salary into the Tennessee Consolidated Retirement System and 403 B Plan. See id. The husband argued that his marital contributions to the retirement account should not be subject to division as marital property because they were "increases or additions." See id. at 373.
The Wilson appellate court interpreted the language "increases or additions" in the antenuptial agreement to mean passive appreciation of the premarital value of the retirement accounts, and not active marital contributions. See id. at 374. Thus, the *1185 marital contributions to the retirement accounts were marital property. See id. at 374. The court noted that Wilson's contributions to the accounts came from his salary, which was neither part of his premarital estate nor a gift or inheritance. See id. at 374. The court reasoned that since Wilson's salary was marital property, Wilson could not place it beyond Moore's reach simply by depositing it into his separate account. See id. at 374.
Like the husband in Wilson, the husband here testified that he contributed a portion of his salary to the retirement account. The value of the postal pension grew substantially during the marriage. Like the husband in Wilson, the husband here argues that the antenuptial agreement protects not only the premarital value of his pension and passive appreciation, but his contributions to the pension from his salary during the marriage. We hold that the antenuptial agreement here protects passive appreciation but does not protect active marital contributions to the pension.
Without a specific provision in the antenuptial agreement that the husband's salary will be his separate property, it is not a protected asset. "Marital assets are those acquired during the marriage, created or produced by the work efforts, services, or earnings of one or both spouses." Steiner v. Steiner, 746 So.2d 1149, 1150 (Fla. 2d DCA 1999). The antenuptial agreement here does not "enable one spouse to place property that would otherwise be marital property beyond the reach of the other spouse simply by depositing it into an account that existed prior to the marriage." Wilson, 929 S.W.2d at 374.
As a corollary, any contributions by the Postal Service during the Witowskis' marriage are also marital property. See Diffenderfer v. Diffenderfer, 491 So.2d 265, 267 (Fla.1986).
To the extent that they [pension plan rights] result from employment time after marriage and before commencement of a matrimonial action, they are contract rights of value, received in lieu of higher compensation which would otherwise have enhanced either marital assets or the marital standard of living and, therefore, are marital property.
Id. at 267.
Therefore, because we have determined in this case that the Witowskis' antenuptial agreement does not protect the marital portion of the husband's retirement fund, the wife is entitled to equitable distribution of that portion attributable to the marital contributions pursuant to section 61.075. The husband is entitled to the premarital value of the fund, plus accumulations thereon.

II. ERISA, REA, AND THE INTERNAL REVENUE CODE
The wife argues that the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1055(c)(2)(A) (amended by the Retirement Equity Act of 1984(REA)), and the Internal Revenue Code, 26 U.S.C. § 417(a)(2), do not permit a non-spouse to waive entitlement to a retirement account. Thus, she contends that even though she signed the antenuptial agreement waiving any interest in the husband's premarital pension in the United States Postal Service retirement fund, her waiver is ineffective, and she is entitled to equitable distribution of not only the marital increase in the pension, but the premarital portion as well.
However, we need not determine the applicability of the federal law. Even if the agreement was an invalid waiver under either of the federal provisions, the premarital portion of the pension account would be a non-marital asset as defined by Florida law. See § 61.075(5)(b)(1); Reyher, 495 So.2d at 800; Griffiths, 563 So.2d at 774. Our interpretation of the agreement herein is dispositive, and we need go no further. Accordingly, we reverse and remand this case to the trial court, with directions to include in its equitable distribution the marital contribution to the United *1186 States Postal Service retirement fund, and accumulations thereon.
Reversed and remanded with directions.
ALTENBERND, A.C.J., and FULMER, J., Concur.