855 So.2d 632 (2003)
Peggy WORLEY, Appellant,
v.
Michael Brady WORLEY, Appellee.
No. 2D01-4488.
District Court of Appeal of Florida, Second District.
August 8, 2003.
Rehearing Denied October 7, 2003.
*633 Cynthia L. Greene of Law Offices of Cynthia L. Greene & Associates, P.A., Miami, and Law Offices of Alison Copley, Sebring, for Appellant.
John W. Frost, II, and Mark A. Sessums of Frost Tamayo Sessums & Aranda, P.A., Bartow, for Appellee.
KELLY, Judge.
Peggy Worley ("the Wife") appeals from the final judgment dissolving her marriage to Michael Brady Worley ("the Husband"). She argues that the trial court erred in finding that the prenuptial agreement entered into between the parties was valid, and that the terms of the agreement constituted a waiver of her right to seek alimony and equitable distribution of marital assets. We affirm without discussion the trial court's decision that the agreement was valid and entered into knowingly and voluntarily. We reverse the trial court's decision that the prenuptial agreement waived the Wife's claims to alimony and equitable distribution of assets.
The parties lived together for five years before marrying in 1978. At the time of dissolution in June 2001, the parties had been married for twenty-two years and had two children. According to the Husband's financial affidavit dated March 6, 2000, the Husband had an annual income of approximately $80,000, and a net worth of $1,411,677. The Wife was working as a day-care provider earning slightly above minimum wage.
In the final judgment of dissolution, the trial court stated:
This Court has interpreted the prenuptial agreement to waive Wife's claims to all forms of alimony and hereby interprets the prenuptial agreement to waive Wife's claim to any enhancement and/or appreciated value in the real and/or personal property acquired during the marriage but titled solely in Husband's name, inclusive of citrus groves, the former marital residence; M & M Citrus, Inc., etc.
The Wife argues that the trial court erred in interpreting the agreement. We agree.
*634 The prenuptial agreement provides in pertinent part:
1. Any property, either real or personal, acquired by either prospective spouse, before or after their marriage, shall be the separate property of the party owning or obtaining the property, and the other party shall make no claim or demand on the separate property, or on the heirs or personal representative of the owner's estate, for that separate property.
....
3. Each of the parties forever waives, releases, and relinquishes any right or claim of any kind, character or nature whatsoever, which either may have in and to the estate, property, assets, or other effects of the other under any present or future law of the State of Florida or of any other state of the United States, except as otherwise specifically provided for in this agreement or any subsequent agreement executed by the parties.
A prenuptial agreement does not waive the right to alimony or support unless the waiver is unambiguously expressed in the agreement. White v. White, 617 So.2d 732 (Fla. 2d DCA 1993). Here, as in White, there is no mention of alimony or support in the prenuptial agreement. Accordingly, the trial court erred when it concluded that the Wife waived her right to seek future support by executing the agreement. See also Baas v. Baas, 718 So.2d 359 (Fla. 2d DCA 1998) (holding without merit the husband's contention that the alimony award violates the parties' separation agreement as the agreement failed to contain an unambiguous waiver of the right to seek alimony).
Likewise, we conclude that the trial court erred in interpreting the provisions of the prenuptial agreement as a waiver of the Wife's right to seek distribution of assets that were acquired during the marriage as a result of the contribution of marital labor and funds or a waiver of her right to a distribution of the enhanced or appreciated value of the Husband's separately titled assets. We agree with the Wife that our decisions in Witowski v. Witowski, 758 So.2d 1181 (Fla. 2d DCA 2000), and Doig v. Doig, 787 So.2d 100 (Fla. 2d DCA 2001), are controlling.
As noted in Witowski, section 61.075, Florida Statutes (2000), governs equitable distribution. Section 61.075(5)(b) provides that assets and liabilities excluded from marital assets and liabilities by a valid written agreement are nonmarital. Accordingly, in Witowski, this court found that because the prenuptial agreement did not specifically protect the husband's salary from consideration as a marital asset, the fact that the husband placed the money in a retirement account that was nonmarital did not put the funds beyond the reach of the other spouse. Witowski, 758 So.2d at 1184.
As in Witowski, the prenuptial agreement in this case does not specifically protect the Husband's salary from consideration as a marital asset and, by extension, does not protect property he purchased with that income from being considered as a marital asset. Here, the Wife argues that both before and during the marriage, the Husband acquired a number of citrus groves from his father but that he paid for all the groves during the marriage through his labor or the use of marital funds. Likewise, she contends that the marital home was paid for with marital funds and that the family business, M & M Citrus, was the product of both parties' marital labor. To the extent the Wife can establish that these properties or the business were acquired in whole or in part with marital funds or labor, the marital properties and the enhanced value of the nonmarital *635 properties attributable to marital contributions are subject to equitable distribution.
Section 61.075(5)(a)(2) provides that "[t]he enhancement in value and appreciation of nonmarital assets resulting either from the efforts of either party during the marriage or from the contribution to or expenditure thereon of marital funds" is a marital asset. In Doig, the parties' agreement provided: "Neither party shall make any claim or acquire any interest in the other party's separate property if it increases in value during the marriage." This court construed that provision to address passive appreciation but not increases in value attributable to marital labor and funds. Id. at 103.
As in Doig, the prenuptial agreement here made no reference to the appreciation or enhancement in value of the Husband's premarital or nonmarital property attributable to marital labor or funds. Accordingly, to the extent that the Wife can establish that the value of the Husband's premarital or nonmarital property was enhanced by virtue of contributions of marital funds or labor, that enhanced value is subject to equitable distribution.
Affirmed in part, reversed in part, and remanded.
NORTHCUTT, J., Concurs.
ALTENBERND, C.J., Concurs with opinion.
ALTENBERND, Chief Judge, Concurring.
I fully concur in the court's opinion. If the critical sentence in paragraph one of the prenuptial agreement regarding property had contained the phrase, "even if acquired with marital income or by virtue of marital labor," I expect that we would reach a different result on the issue of equitable distribution.
This case demonstrates the need for some standard, approved language for use in prenuptial agreements. In my opinion, it also demonstrates the need for legislation regulating the situations in which such agreements can be used.
These agreements may have merit in second marriages between older people who wish to preserve most of their premarital assets for their children and grandchildren. At least for a term of ten or fifteen years, a prenuptial agreement to protect assets may be sensible in a case where one party has extensive family assets and the other does not. There are undoubtedly other instances in which prenuptial agreements serve a valid purpose.
All too often, these agreements are used when one member of the marriage simply wants to opt out of the general public policies established by the legislature in chapter 61 for the well-being of the citizens of this state. In this case, for example, the parties were in their late twenties and had lived with one another for several years before the marriage in 1978. The Wife was several months pregnant when the Husband insisted on an agreement prior to the wedding. Neither party had an extraordinary earning ability. The Husband apparently expected that his family would transfer ownership of portions of the citrus groves to him during the term of the marriage in exchange for his labors in caring for this land.
I see no reason why the legislature would want the Husband in such a situation to be able to permanently opt out of the statutory obligation to pay alimony or attorneys' fees. It is perhaps more debatable whether the legislature should permit a person to forfeit a claim for equitable distribution of marital assets. If I were a legislator, I would question whether it was good public policy to allow a man to obtain *636 a waiver of equitable distribution in consideration for a wedding that legitimizes a child.
If the legislature were to enact a law addressing prenuptial agreements, I doubt that it would permit young couples with limited assets and income who are intending to raise a family to divert what would otherwise be marital assets to the sole benefit of one party at the expense of the other party and any children. As shown in this case, permitting prenuptial agreements under these circumstances could allow a party to leave a lengthy marriage with assets in excess of $1,000,000, most acquired during the marriage as a result of the family's labor, and to leave the other spouse, who may have responsibility for the children, with virtually nothing. However, unless and until the legislature addresses this subject, young couples are free to enter into such contracts so long as they are precisely worded, and the courts are compelled to enforce them absent fraud, duress, or overreaching.