TAYLOR, J.
The wife appeals an amended final judgment entered in this dissolution action, arguing that 1) the trial court erred by finding the parties’ prenuptial agreement to be valid; 2) even if the prenuptial agreement was valid, the trial court erred in its interpretation of it; 3) the trial court erred with respect to the child support award; and 4) the trial court erred in curtailing discovery. The husband cross-appeals two of the trial court’s rulings in connection with the validity of the prenuptial agreement, but we construe these as alternative arguments for upholding the prenuptial agreement.[1] We affirm in part, reverse in part, certify conflict with other districts, and certify a question of great public importance.

Validity of Prenuptial Agreement

A trial court’s decision to uphold an antenuptial agreement must be supported by competent, substantial evidence. See Waton v. Waton, 887 So.2d 419, 421-22 (Fla. 4th DCA 2004); Herrera v. Herrera, 895 So.2d 1171, 1175 (Fla. 3d DCA 2005).
A party may challenge a prenuptial agreement in one of two ways. The first ground for setting aside an antenuptial agreement is satisfied where a spouse establishes that the agreement was the product of “fraud, deceit, duress, coercion, misrepresentation, or overreaching.” Casto v. Casto, 508 So.2d 330, 333 (Fla.1987). The second ground for vacating a prenuptial agreement contains multiple elements. Id.
To challenge the antenuptial agreement on the second ground, “[initially, the challenging spouse must establish that the agreement makes an unfair or unreasonable provision for that spouse, given the circumstances of the parties.” Id. When claiming that an agreement is unreasonable, the challenging spouse must present evidence of the parties’ relative situations, including their respective ages, *1011 health, education, and financial status. Id. “[A] trial court may determine that the agreement, on its face, does not adequately provide for the challenging spouse and, consequently, is unreasonable. In making this determination, the trial court must find that the agreement is ‘disproportionate to the means’ of the defending spouse.” Id. “This finding requires some evidence in the record to establish a defending spouse’s financial means.” Id.
However, “[t]he element of fairness should, of course, be measured as of the time of the execution of the agreement.” Del Vecchio v. Del Vecchio, 143 So.2d 17, 20 (Fla.1962); see also Francavilla v. Francavilla, 969 So.2d 522, 526 (Fla. 4th DCA 2007) (determining the fairness of the prenuptial agreement by the circumstances of the parties when the agreement was signed in 1993: “When measured by the 1993 circumstances of the parties, the prenuptial agreement took into account various risks and made reasonable provisions for the wife.”).
“Once the claiming spouse establishes that the agreement is unreasonable, a presumption arises that there was either concealment by the defending spouse or a presumed lack of knowledge by the challenging spouse of the defending spouse’s finances at the time the agreement was reached.” Casto, 508 So.2d at 333. The burden then shifts to the defending spouse, who may rebut these presumptions by showing that there was either (a) a full, frank disclosure to the challenging spouse by the defending spouse before the signing of the agreement relative to the value of all the marital property and the income of the parties, or (b) a general and approximate knowledge by the challenging spouse of the character and extent of the marital property sufficient to obtain a value by reasonable means, as well as a general knowledge of the income of the parties. Id.
While the disclosure should be full, fair and open, it need not be minutely detailed or exact. Del Vecchio, 143 So.2d at 21. “The basic issue is concealment, not the absence of disclosure, and the wife may not repudiate if she is not prejudiced by lack of information.” Id.
Here, we affirm the trial court’s determination that the wife failed to establish that the prenuptial agreement was invalid for fraud or misrepresentation under the first part of Casto. Moreover, we conclude that the prenuptial agreement was fair[2] when it was entered into, so the wife’s challenge to the agreement fails under the second part of Casto as well. Therefore, it is unnecessary to reach the question of whether the wife received a full, frank disclosure or whether she had a general and approximate knowledge of both the husband’s assets and income. Although our reasoning is slightly different than that of the trial court, we conclude that the trial court properly upheld the validity of the prenuptial agreement.

Interpretation of Prenuptial Agreement as to Property Distribution

The main issue concerning the interpretation of the prenuptial agreement is whether the wife waived any claim to assets titled solely in the husband’s name at the time of the divorce, even if those assets were acquired during the marriage due to the parties’ marital efforts or appreciated *1012 in value during the marriage due to the parties’ marital efforts.
The prenuptial agreement was entered into in 1986 and contains the following provisions:
2. DIANNE’S RELEASE. Except as otherwise provided for herein, in the event either of the Parties hereto institutes legal proceedings for ... dissolution of marriage ..., DIANNE hereby waives and releases, and is hereby barred from any and all rights and claims of every kind, nature and description that she may acquire or to which she may be entitled under the laws of any jurisdiction as a result of the marriage between the Parties, in and to any of HARRY’S property, including, but without intending thereby to limit the generality of the foregoing, any and all right to alimony, either lump sum, rehabilitative, permanent, or otherwise, support and maintenance, equitable distribution, division of property, special equities, attorney’s fees, or any other rights that DIANNE may have against HARRY relative to financial issues.
5. RETENTION OF SOLE PROPERTY. Except to the extent that the parties may otherwise desire, HARRY and DIANNE shall, during their respective lifetimes, keep and retain sole ownership, control, enjoyment and power of disposition with respect to all property, real, personal or mixed, now owned or hereby acquired by each of them respectively, free and clear of any claim by the other ....
9. MUTUAL RELEASE. In consideration of the marriage of the Parties to each other, and in consideration of the other provisions herein contained, each party agrees that neither will ever claim any interest in the other’s property and that the property of every kind, nature and description which either one has on the date of the marriage will remain the respective separate property of each after said marriage, and each agrees not to make any claim against the property of the other ....
17. TITLE PRESUMPTIONS. It is additionally understood that if HARRY purchases, acquires, or otherwise obtains, property and title to said property is in HARRY’s name with DIANNE and no explanation is made as to the percentages of interest that either party has, then it shall be presumed that they shall be 50%-50% owners of said property. If HARRY purchases, acquires, or otherwise obtains, property in his own name, then HARRY shall be the sole owner of same. If DIANNE purchases property in her name, then DIANNE shall be the sole owner of same.
(Emphasis added).
A trial court’s interpretation of a prenuptial agreement is reviewed de novo, as such agreements are governed by contract law. Heiny v. Heiny, 113 So.3d 897, 900 (Fla. 2d DCA 2013). “Generally, the intentions of the parties to a contract govern its construction and interpretation. When determining intent, the best evidence is the plain language of the contract.” Royal Oak Landing Homeowner’s Ass’n v. Pelletier, 620 So.2d 786, 788 (Fla. 4th DCA 1993). Contracts are made in legal contemplation of existing, applicable statutes and so it is that marriage contracts and any ante or post-nuptial contracts are entered into subject to then-existing law, including the law of this state. Belcher v. Belcher, 271 So.2d 7, 9 (Fla.1972).
Section 61.075, Florida’s equitable distribution statute, was enacted on October 1, 1988, and applies to all proceedings commenced after its effective date. § 61.075, *1013 Fla. Stat. (2007)[3]; Laws of Fla. 1988, c. 88-98. Section 61.075(5)(a)2., Florida Statutes (2007), provides that marital assets include the “enhancement in value and appreciation of nonmarital assets resulting either from the efforts of either party during the marriage or from the contribution to or expenditure thereon of marital funds or other forms of marital assets, or both.”
As a preliminary matter, we reject the husband’s argument that the application of section 61.075 to a prenuptial agreement executed before the enactment of that statute would constitute an unconstitutional impairment of a preexisting contract. Section 61.075(5)(a)2., Florida Statutes (2007), was not a change in the law. The Florida Supreme Court has described section 61.075 as largely a codification of existing case law. Robertson v. Robertson, 593 So.2d 491, 493 (Fla.1991). Furthermore, even before the enactment of section 61.075, the case law provided that the “increased value of assets solely owned by one spouse prior to the marriage should be considered marital assets subject to equitable distribution to the extent their increased value was the result of either one or both spouses’ work efforts, or the expenditure of marital funds or earnings of the parties.” Keller v. Keller, 521 So.2d 273, 276 (Fla. 5th DCA 1988) (citing Crapps v. Crapps, 501 So.2d 661 (Fla. 1st DCA 1987); Sanders v. Sanders, 492 So.2d 705 (Fla. 1st DCA 1986)). In any event, if we were to agree with the wife’s argument that the prenuptial agreement in this case is silent on the issue of enhancement value, then the application of section 61.075 would not result in an unconstitutional impairment of any contractual right.
Turning to the proper interpretation of the prenuptial agreement, we must decide whether the provisions of the prenuptial agreement are broad enough to waive the wife’s right to any asset titled in the husband’s name that was acquired or enhanced during the marriage with marital labor or earnings.
This court has recently stated that “[w]here a prenuptial agreement does not address the right to enhanced value of a non-marital asset, that value is subject to equitable distribution.” Weymouth v. Weymouth, 87 So.3d 30, 34 (Fla. 4th DCA 2012).[4] In Weymouth, we held that a prenuptial agreement did not contain a waiver of any right the wife had to the appreciation of value of a house that was the husband’s non-marital asset before the marriage. Id. The prenuptial agreement in that case stated that the wife “specifically waives any and all claim or claims which she might have in and to the real and personal property of [the husband], owned prior to marriage.” Id. at 32. Nonetheless, we found that the agreement did not contain an express waiver of growth or appreciation of pre-marital or non-marital assets. Id.
The Weymouth court cited the Third District’s decision in Valdes v. Valdes, 894 So.2d 264 (Fla. 3d DCA 2004). There, the Third District held that the wife did not waive her right to seek equitable distribution of the enhanced value of non-marital property where the parties’ prenuptial agreement was silent on the issue of enhancement or appreciation of the parties’ *1014 non-marital property. Id. at 265-67. The Valdes court found no waiver despite provisions in the prenuptial agreement stating that 1) .the parties would have no interest in or to property acquired prior to the marriage nor make any claim against said property, and 2) assets acquired by parties, wherein ownership or title was not taken jointly or as tenants by entireties, would be presumed to be non-marital assets, and would be considered the separate property of the spouse acquiring same. Id.
Moreover, the Second District has held that if a prenuptial agreement does not specifically designate a spouse’s earnings as separate property, the assets acquired with those earnings will be treated as marital. See Irwin v. Irwin, 857 So.2d 247, 248-49 (Fla. 2d DCA 2003) (“The [prenuptial] agreement did not specifically reserve Mr. Irwin’s marital earnings as his separate property, and thus did not exclude Mrs. Irwin’s claim to share in the value of assets purchased with those earnings. Nor did the agreement waive Mrs. Irwin’s claim to her rightful share of the marital asset consisting of the enhanced value of Mr. Irwin’s separate property that resulted from the contribution of marital funds or labor.”) (citations omitted); Witowski v. Witowski, 758 So.2d 1181, 1185 (Fla. 2d DCA 2000) (“Without a specific provision in the antenuptial agreement that the husband’s salary will be his separate property, it is not a protected asset.”).
The Second District has also held that a simple waiver of appreciation or increase in value waives only passive appreciation, not active appreciation attributable to marital labor and funds. See Worley v. Worley, 855 So.2d 632, 635 (Fla. 2d DCA 2003); see also Doig v. Doig, 787 So.2d 100, 103 (Fla. 2d DCA 2001) (a prenuptial agreement providing that “[n]either party shall make any claim or acquire any interest in the other party’s separate property if it increases in value during the marriage” addressed only passive appreciation of property and did not preclude application of section 61.075).
The case law, however, is not completely consistent in this area. For example, the Fifth District held that a trial court properly relied upon a prenuptial agreement in denying the former wife any equitable distribution of properties owned by the husband prior to the marriage, even though they appreciated in value due to investment of marital labor and income. See Cameron v. Cameron, 591 So.2d 275, 276-77 (Fla. 5th DCA 1991). The prenuptial agreement in Cameron stated that each party “may keep and retain what was his or her own property before marriage.” Id. at 276. The Cameron agreement also stated that it was the wife’s intention to “waive, relinquish and bar her rights of dower and other statutory rights and interests as wife ... of Richard E. Cameron ... to ... property owned by Richard E. Cameron at the present time or to be acquired by him in the future.” Id,. The Fifth District concluded that if the prenuptial agreement “is to effectively shield such properties from Phyllis’ claims, it must also include any appreciation in value.” Id. at 277. The Fifth District, however, affirmed the trial court’s ruling — based on the former wife’s testimony and the ambiguity of the prenuptial agreement — that the prenuptial agreement was intended to shield the husband’s plumbing company but did not encompass marital assets acquired after the parties’ marriage. Id.
Similarly, in Timble v. Timble, 616 So.2d 1188, 1189 (Fla. 4th DCA 1993), we held that the trial court appropriately denied the wife’s claim for enhancement of the value of the husband’s stock in a company, where the prenuptial agreement provided that each party released any claim to the *1015 property of the other by reason of the marriage and that the husband “is given full rights ... in all respects the same as he would have if not married to use, enjoy, manage, convey, bequeath, mortgage, grant, sell, invest, reinvest, alienate and dispose of all and every part of any stock or other interest, or security he owns ... or may hereafter acquire in Headco Industries.” Although the Timble opinion is brief and does not expressly describe the nature of the enhancement of value in the Headco stock, certain language of the opinion suggests that the appreciation was not purely passive:
Neither the trial court, nor the parties could have been aware of Watford v. Watford, 605 So.2d 1313 (Fla. 4th DCA 1992), decided after the final judgment and after the parties’ briefs were filed. While that decision would have affected our view of the trial court’s final judgment had there been no antenuptial agreement, the existence of the agreement moots any language of the final judgment which characterizes the passive nature of the enhancement and its exclusion as a marital asset. The still viable language of the final judgment is that governing part thereof based upon the parties’ agreement.

Id.

In Stern v. Stern, 636 So.2d 735, 737-40 (Fla. 4th DCA 1993), we relied upon Cameron and Timble in holding that a husband waived the right to share in any enhancement in value of the wife’s interest in her businesses, because the husband signed a prenuptial agreement stating that he “waives any right to any stock in NRC Electronics, Inc. currently belonging to [the wife] as of this date” and that “[s]ame shall apply to any future subsidiaries of NRC Electronics, Inc.”
Notably, in Witowski, the Second District distinguished both Cameron and Tim-ble. 758 So.2d at 1184. The Witowski court reasoned that the agreement in Cameron “specifically addressed future enhancement” where the wife waived her rights to property “to be acquired by” the husband in the future. Id. The Witowski court also distinguished Timble on the theory that the wife in that case “relinquished any possibility of equitable distribution of marital contributions to the husband’s stock.” Id.
Here, we conclude that under the plain language of the prenuptial agreement, the wife waived and released claims to property or assets owned by the husband at the time of the agreement, or acquired in his own name thereafter, including any enhancement in the value of such property. The language of the agreement was broad enough to waive the wife’s right to any asset titled in the husband’s name that was acquired during the marriage or that appreciated in value due to marital income or efforts during the marriage. Cf. Ledea-Genaro, 963 So.2d at 752 (“Under the plain meaning of the agreement, the wife conveyed her entire interest in the marital home, and there was no need for a separate provision dealing with ‘equity’ in the home.”).
The Witowski court’s theory for distinguishing Cameron and Timble was that the prenuptial agreements in those cases specifically addressed the husband’s future acquisition of property during the marriage. However, the present case is more like Timble than Witowski. In this case, unlike Witowski, the title presumption provision in paragraph 17 of the prenuptial agreement does address property acquired by the husband in the future. We conclude that paragraph 17, when read together with the other provisions of the prenuptial agreement, is sufficient to waive future enhancement of non-marital property, even if it is due to marital earnings or labor. To hold otherwise would read the *1016 title presumption provision out of the agreement. If the prenuptial agreement is to effectively shield the husband’s assets from the wife’s claims, it must also include any appreciation in value. Similar to Timble, the trial court appropriately denied the wife’s claim for enhancement value of the husband’s non-marital property.
We distinguish Weymouth because in that case the prenuptial agreement did not address the future acquisition of property. Indeed, in Weymouth, the prenuptial agreement specifically provided that property acquired by either spouse during the marriage (other than property acquired by either of them by gift or inheritance) was marital property. Unlike Weymouth, we conclude that the prenuptial agreement in this case was broad enough to encompass a waiver of enhanced value of non-marital property. We interpret the prenuptial agreement as prohibiting the wife from claiming any right to property titled in the husband’s sole name, including the appreciation of premarital assets and income or assets derived from marital efforts or dollars.
We acknowledge that both the Second District and Third District have construed prenuptial agreements with substantially similar title provisions as being insufficient to waive a spouse’s claim to the enhanced value of the other spouse’s non-marital property that resulted from marital earnings. See Irwin; Valdes. To the extent that this decision is in conflict with Irwin and Valdes, we certify conflict.[5]

Interpretation of Prenuptial Agreement as to Modification

Prenuptial agreements limiting alimony to a certain amount are subject to judicial modification. See Posner v. Posner, 233 So.2d 381, 385-86 (Fla.1970) (“Posner I”) (an antenuptial agreement settling alimony rights is subject to increase or decrease under changed conditions as provided in section 61.14, Florida Statutes, as the parties are assumed to have known of the existence of the statute when they made their agreement); Posner v. Posner, 257 So.2d 530, 534 (Fla.1972) (“Posner II”) (“a change in circumstances of the party since the date of the agreement can be considered by the [cjhancellor in modification of support and alimony provided for in an antenuptial agreement”); Lashkajani v. Lashkajani, 911 So.2d 1154, 1156-57 (Fla.2005) (discussing evolution of law in Posner I & II).
By contrast, a “true property settlement agreement” is not subject to modification. See Shaw v. Shaw, 448 So.2d 631, 632 (Fla. 4th DCA 1984) (citing Salomon v. Salomon, 196 So.2d 111 (Fla.1967)).
Furthermore, at least in the context of marital settlement agreements, the law is clear that parties may waive their statutory right to seek modification of alimony provisions in a settlement agreement if the language in the agreement clearly and unambiguously expresses waiver or if the interpretation of the agreement as a whole can lead to no other conclusion but waiver. Tapp v. Tapp, 887 So.2d 442, 444 (Fla. 2d DCA 2004).
Here, the trial court erred in finding that the wife waived the right to petition for a modification of alimony. The *1017 trial court construed the prenuptial agreement to constitute a “blend” of property distribution and alimony. Notably, the prenuptial agreement provided that the alimony payments would cease upon the wife’s death or remarriage. Thus, the prenuptial agreement clearly contained an alimony component and was not a “true property settlement.” See Woodworth v. Woodworth, 385 So.2d 1024, 1026 (Fla. 4th DCA 1980) (provision in prenuptial agreement was not true property settlement where it stated that payments were to terminate on death of wife or on wife’s remarriage).
The prenuptial agreement was silent on modification of alimony. The general waiver of alimony “except as otherwise provided” in the agreement was not specific enough to waive the wife’s right to seek judicial modification of the alimony provided for in the agreement. Alimony was “otherwise provided” in the prenuptial agreement, and the provisions regarding alimony did not specifically waive the right to modification. Furthermore, the integration clause in the prenuptial agreement cannot reasonably be construed as prohibiting judicial modification of the alimony obligation. We reverse the trial court’s ruling that the prenuptial agreement precluded the wife from seeking modification of alimony.

Miscellaneous Issues

We find no abuse of discretion as to the child support award. Furthermore, in light of our interpretation of the prenuptial agreement, the trial court did not abuse its discretion in limiting the scope of discovery.
Any other issue not specifically addressed in this opinion is either without merit or moot.

Conclusion

In sum, we affirm on the issue of the validity of the prenuptial agreement. As to the trial court’s interpretation of the agreement, we reverse only the trial court’s ruling that the wife waived the right to seek modification of alimony.
We affirm the trial court’s conclusion that the wife waived any claim to assets titled solely in the husband’s name at the time of the divorce, even if those assets were acquired during the marriage due to the parties’ marital efforts or appreciated in value during the marriage due to the parties’ marital efforts. We certify conflict with the Second and Third Districts. Furthermore, because this issue is one that is likely to recur and has a significant impact on citizens who have entered into prenuptial agreements, we certify the following question to our supreme court as one of great public importance:
Where a prenuptial agreement provides that neither spouse will ever claim any interest in the other’s property, states that each spouse shall be the sole owner of property purchased or acquired in his or her name, and contains language purporting to waive and release all rights and claims that a spouse may be entitled to as a result of the marriage, do such provisions serve to waive a spouse’s right to any share of assets titled in the other spouse’s name, even if those assets were acquired during the marriage due to the parties’ marital efforts or appreciated in value during the marriage due to the parties’ marital efforts?

Affirmed in part, Reversed in part; Conflict certified; Question certified.

CONNER and KLINGENSMITH, JJ., concur.

. The husband also raises an issue on cross-appeal concerning a credit for overpayment of temporary attorney’s fees, but we find that issue to be moot in light of our disposition in case number 4D11-2717.

. The prenuptial agreement contained convoluted provisions governing how much money the wife would receive in the event of a divorce. Based on the length of the marriage, which lasted over twenty years, the wife was entitled to receive about $1.9 million paid out over seven years.

. The 2007 statute was still in effect when the husband filed for divorce in February 2008.

. In Weymouth, we distinguished our earlier opinion in Ledea-Genaro v. Genaro, 963 So.2d 749 (Fla. 4th DCA 2007), where we held that the wife waived her right to any share in the equity in the marital home where the prenuptial agreement unambiguously required her to quitclaim her entire interest in the home to the husband in the event that a petition for dissolution was filed.

. This court has previously cited Valdes for the general proposition that the enhanced value of a non-marital asset is subject to equitable distribution where a prenuptial agreement does not address the right to enhanced value. See Weymouth, 87 So.3d at 34-35. However, the Weymouth court did not actually address whether a title provision similar to the one in Valdes was broad enough to address the issue of enhancement or appreciation of the husband’s non-marital property.