894 So.2d 264 (2004)
Pablo J. VALDES, Appellant,
v.
Ibis Morejon VALDES, Appellee.
Nos. 3D02-2364, 3D02-1388.
District Court of Appeal of Florida, Third District.
June 9, 2004.
Rehearing Denied March 4, 2005.
Greene, Smith & Associates and Cynthia L. Greene, Miami; Leinoff & Lemos and Andrew M. Leinoff, Coral Gables, for appellant.
Hall, David and Joseph, and Adam S. Hall, and Justin Arnold, Miami, for appellee.
Before SCHWARTZ, C.J., and LEVY and SHEVIN, JJ.
PER CURIAM.
Pablo J. Valdes, the former husband, appeals from the Final Judgment of Dissolution of Marriage, awarding equitable distribution of the enhancement value of non-marital property, and from an Attorney Fees Order requiring that the former husband pay a portion of Ibis Morejon *265 Valdes', the former wife's, attorney fees. Mrs. Valdes cross-appeals from the Final Judgment to the extent that the trial court made an unequal distribution of the enhancement valuation. We reverse in part and affirm in part.
Mr. and Mrs. Valdes were married in 1991. Mr. Valdes came into the marriage with a net worth of $8,000,000, consisting primarily of real estate holdings. Mrs. Valdes came into the marriage with approximately $180,000, consisting primarily of personal property. Three children were born out of the marriage, all of them are minors. Prior to the marriage, the parties entered into a Prenuptial Agreement, which the parties stipulated was valid. The parties waived any entitlement to alimony in the prenuptial agreement, and Mr. Valdes agreed to pay $100,000 to Mrs. Valdes upon the dissolution of their marriage. Additionally, the prenuptial agreement specifically provided that each party would retain his or her respective premarital property, and any property or assets acquired during the marriage wherein title was held individually. Specifically, the prenuptial agreement provided in pertinent part:
Whereas, it is the intention of [the Wife] to waive, relinquish and bar her statutory rights and interests, including alimony and support as the Wife or Widow of [the Husband], and to the real, personal and mixed property owned by [the Husband] at the present time, or to be acquired by him in the future, unless otherwise specified in this Agreement.
* * *
5. PROPERTY ACQUIRED PRIOR TO MARRIAGE: Each of the Parties represent to the other that he or she owns the real and personal property listed on Exhibits "C" and "D" disclosed at the time of executing this Agreement. Each Party represents to the other that they shall have no interest in or to said property nor make any claim against said property in the future should their marriage be dissolved by a Court of Competent Jurisdiction, unless title to the property listed in said Schedules should change subsequent to marriage into joint ownership, or as otherwise provided in this Agreement.
6. PROPERTY ACQUIRED AFTER MARRIAGE: The Parties acknowledge to each other that subsequent to their marriage they may purchase for their own individual interest either real, personal or mixed property. Each Party acknowledges and agrees that the other Party may purchase any real, personal or mixed property subsequent to their marriage and if said property is taken or titled in the individual name of said Party purchasing same, the other Party shall have no interest in said after acquired property, nor make any claim to said property should this marriage be dissolved by a Court of Competent Jurisdiction, or should said property remain in the Estate of said Party, at the time of the Party's demise.
7. PROPERTY ACQUIRED AFTER MARRIAGE, NOT TO BE CONSIDERED MARITAL ASSETS: The Parties agree that any and all assets acquired by them, wherein ownership or title is not taken jointly or as tenants by the entireties, shall be presumed to be non-marital assets, and shall be considered the separate property of the person acquiring same.
The prenuptial agreement was silent on the issue of enhancement or appreciation of the parties' non-marital property.
The parties separated in March of 2000. During the dissolution proceedings, Mrs. Valdes asserted six separate claims against Mr. Valdes. After several days of trial, *266 the court entered an Order of Involuntary Dismissal against Mrs. Valdes as to five of the six claims. Specifically, the trial court found that, consistent with the prenuptial agreement, the parties maintained separate finances during the marriage, including separate bank accounts, and filed separate tax returns. Additionally, the trial court found that Mr. Valdes paid Mrs. Valdes' taxes. During the marriage, Mrs. Valdes worked on behalf of Mr. Valdes' business projects and received a salary to that end, even when she did not work, which she retained in her separate bank account. The court also found that Mr. Valdes paid all of the household expenses and that the parties did not acquire any joint assets or property during the course of the marriage. Thus, only Mrs. Valdes' claim for equitable distribution remained.
As part of her equitable distribution claim, Mrs. Valdes asserted that certain properties were owned by her, and that she was entitled to the enhanced value of Mr. Valdes' non-marital property. The court found that the two properties were Mr. Valdes' non-marital property. However, the court found that absent a specific waiver of the enhanced value to non-marital property in the prenuptial agreement, the enhancement value of the non-marital assets resulting from marital efforts were subject to equitable distribution. Mrs. Valdes presented evidence that Mr. Valdes' net worth increased by $8,000,000 during the marriage. The court found it difficult to separate Mr. Valdes' premarital assets from his non-marital assets obtained during the marriage, finding that Mr. Valdes' non-marital assets are "regularly in play and interrelated to all other properties." As a result, the court calculated the enhancement value as suggested by Mrs. Valdes and found that the properties are so intermingled that the increase in Mr. Valdes' net worth should be classified as a marital asset. Consequently, the court set the marital assets value at $8,000,000  Mr. Valdes' increased net worth.
Nevertheless, the court found that an unequal distribution was warranted because Mr. Valdes' net worth was grounded upon his business acumen and the development of assets which belonged to him prior to the marriage. Additionally, the court found that Mr. Valdes paid all of the expenses during the marriage, which allowed Mrs. Valdes to increase her personal financial status, and retain an enhanced home free and clear, plus the $100,000 she received under the prenuptial agreement. Thus, the court set the marital assets amount at $8,000,000 and awarded Mrs. Valdes, among other things, including the marital home which husband waived any interest to, $800,000. The court also entered an Order on attorney fees, awarding partial fees to Mrs. Valdes.
Mr. Valdes appeals from the portion of the Final Judgment which determines that the entirety of the increase in his net worth was a marital asset, and from the trial court's Order on attorney fees which finds that Mrs. Valdes was the "prevailing party" in the litigation below. Mrs. Valdes cross-appeals from the Final Judgment to the extent the trial court found that an unequal distribution of the only "marital asset" was warranted, resulting in Mrs. Valdes recovering less than ten percent of the value of the asset. Additionally, Mrs. Valdes challenges the trial court's rounding down of the enhancement value of the marital asset from $8,506,399.75 to $8,000,000.

EQUITABLE DISTRIBUTION  ENHANCEMENT VALUE
In Doig v. Doig, 787 So.2d 100, 103 (Fla. 2d DCA 2001), the Court held that a prenuptial agreement providing that: "neither *267 party shall make any claim or acquire any interest in the other party's separate property if it increases in value during the marriage" addressed only passive appreciation of property and did not preclude application of section 61.075, Florida Statutes which provides that increases in value of a non-marital asset that are attributable to marital labor or funds are subject to equitable distribution. Doig, 787 So.2d at 103; see also § 61.075, Fla. Stat. Similarly, in Irwin v. Irwin, 857 So.2d 247 (Fla. 2d DCA 2003), the Second District reversed a Final Judgment of Dissolution, finding that "[t]he agreement did not specifically reserve Mr. Irwin's marital earnings as his separate property, and thus did not exclude Mrs. Irwin's claim to share in the value of assets purchased with those earnings. Nor did the agreement waive Mrs. Irwin's claim to her rightful share of the marital asset consisting of the enhanced value of Mr. Irwin's separate property that resulted from the contribution of marital funds or labor." Irwin, 857 So.2d at 248 (citations omitted); Witowski v. Witowski, 758 So.2d 1181 (Fla. 2d DCA 2000).
In the instant case, the prenuptial agreement does not address enhancement value. See Worley v. Worley, 855 So.2d 632, 634 (Fla. 2d DCA 2003)(A prenuptial agreement does not waive the right to enhancement in value of "non-marital" property unless the waiver is unambiguously expressed in the agreement); Witowski v. Witowski, 758 So.2d 1181 (Fla. 2d DCA 2000); see also White v. White, 617 So.2d 732 (Fla. 2d DCA 1993)(where the parties did not specify alimony in the agreement, the court found that wife did not expressly waive right to alimony); Cf. Cameron v. Cameron, 591 So.2d 275 (Fla. 5th DCA 1991)(where the Fifth District affirmed trial court's interpretation of prenuptial agreement as waiving all rights to non-marital property assets where the agreement specifically provided that: "[I]t is the intention of [wife] to waive and relinquish her rights of dower and other statutory rights and interests, as wife or widow of [husband] in and to real, personal, and mixed property owned by [husband] . . ."). Specifically, the prenuptial agreement in the instant case provides: the parties "shall have no interest in or to said property nor make any claim against said property;" and "assets acquired by [the parties], wherein ownership or title is not taken jointly or as tenants by the entireties, shall be presumed to be non-marital assets, and shall be considered the separate property of the person acquiring same." Accordingly, we conclude that the trial court properly found that Mrs. Valdes did not waive her right to seek equitable distribution of the enhanced value of non-marital properties, despite the prenuptial agreement. Additionally, the enhancement value of the non-marital properties was the result of marital labor from both parties. See Cameron v. Cameron, 591 So.2d 275 (Fla. 5th DCA 1991).
However, we reverse the valuation of the enhancement on the ground that there is no Record evidence to support the trial court's valuation of the enhancement value of the non-marital property/assets. Section 61.075(3), Florida Statutes, requires that any distribution of assets or liabilities be supported by factual findings in the judgment based on competent substantial evidence. § 61.075(3), Fla. Stat. In the instant case, the court's valuation was based strictly on Mr. Valdes' net worth, which presumably also includes other assets not subject to the valuation. Where the Final Judgment does not identify the property, nor its value, we cannot affirm the court's rationale for the distribution. Accordingly, we reverse the calculation of the enhancement value and remand for *268 further proceedings consistent with section 61.075, Florida Statutes.

ATTORNEY FEES
In light of our holding, and the posture of the case, we reverse the award of attorney fees because we do not know who the "prevailing party" is.

CROSS-APPEAL
We affirm the issues raised on cross-appeal because the trial court's conclusion to award an unequal distribution of the "marital asset," is supported by its factual findings that the enhancement value was a result of Mr. Valdes' business acumen and development of assets which belonged to him prior to the marriage, and in light of the court's finding that Mr. Valdes paid all of the expenses during the marriage, allowing Mrs. Valdes to increase her personal financial status.
Reversed in part, affirmed in part and remanded.