WELLS, Judge.
 

 These consolidated appeals are from a number of orders entered on remand for the purpose of determining the enhanced value of the former husband’s non-marital property and distribution of same. Because the orders fail to accomplish our mandate we reverse and remand for further proceedings as provided herein.
 

 FACTS
 

 The parties were married for nine years and are the parents of three children. The former husband, Pablo J. Valdes, was and is a successful real estate investor and developer who entered the marriage with a net worth of approximately $8,000,000 in real estate holdings. The former wife, Ibis Morejon Valdes, entered the marriage with about $180,000 in personal property.
 
 See Valdes v. Valdes,
 
 894 So.2d 264, 264 (Fla. 3d DCA 2005)
 
 {“Valdes P’).
 

 Before the parties married, they entered into a prenuptial agreement. In
 
 Valdes I,
 
 this court agreed with the court below that although the former wife had waived any interest in the former husband’s separate
 
 *9
 
 or non-marital property in the prenuptial agreement, she had not waived “the enhanced value of [the former husband’s] non-marital properties” which stemmed from marital labor.
 
 Id.
 
 at 267. However, we reversed the distribution fashioned by the court below because the enhanced value assessed, $8,000,000, lacked evidentiary support:
 

 In the instant case, the prenuptial agreement does not address enhancement value.... Accordingly, we conclude that the trial court properly found that [the former wife] did not waive her right to seek equitable distribution of the enhanced value of non-marital properties, despite the prenuptial agreement. Additionally, the enhancement value of the non-marital properties was the result of marital labor from both parties.
 

 However, we reverse the valuation of the enhancement on the ground that there is no Record evidence to support the trial court’s valuation of the enhancement value of the non-marital property/assets.... In the instant case, the court’s valuation was based strictly on [the former husband’s] net worth, which presumably also includes other assets not subject to the valuation. Where the Final Judgment does not identify the property, nor its value, we cannot affirm the court’s rational for the distribution. Accordingly, we reverse the calculation of the enhancement value and remand for further proceedings consistent with section 61.075, Florida Statutes.
 

 Id.
 
 at 267-68 (citations omitted).
 

 The First Remand
 

 On remand, the former wife requested that the lower court consider new evidence regarding the enhanced value of the former husband’s premarital properties. The former husband objected, claiming that there was sufficient evidence from the nine-day divorce trial to make a determination. The lower court denied the former wife’s request concluding that it would “rely solely upon the evidence and testimony previously presented in adjudicating the remanded issue.” Then, relying solely on the former husband’s Exhibit W, which contained figures taken from the former husband’s 2001 financial affidavit, and which was introduced into evidence at trial, the court below concluded that: (1) at the time of the marriage, the former husband had $10,961,458 in assets and $2,936,127 in liabilities, leaving him with net worth of $8,025,331; (2) of the thirty-one assets listed oh Exhibit W as being owned by the former husband at the time of the marriage, only thirteen assets still existed and had any value at the time the petition for dissolution was filed in 2000; and (3) based on the numbers provided by Exhibit W, these thirteen properties had increased in value by only $293,535 during the marriage.
 
 [1]
 

 The former wife appealed from this determination. While this appeal was pending, the former wife filed a Florida Rule of Civil Procedure 1.540 motion for relief from judgment claiming that the former husband’s 2001 financial affidavit and his Exhibit W intentionally omitted the values of a number of premarital assets that he still owned at the time of the divorce. Jurisdiction was relinquished for consideration of this motion. Although the trial court denied the Rule 1.540 motion on finding that no fraud had been demonstrated, it requested a further relinquishment of jurisdiction upon realizing that
 
 *10
 
 Exhibit W — the exhibit on which it had “relied completely in making its findings” — did not accurately represent the former husband’s ownership interests at the time of the divorce:
 

 8. [I]n the process of taking testimony on the Former Wife’s [Rule 1.540] Motion, the Court Found that it had made a mistake in it’s calculations of the properties and the values in its previous [Order on Remand from District Court of Appeal].
 

 9. This is so because the Court relied completely in making its findings in the Order on Remand, and in the trial, on what has been identified as Exhibit W. Exhibit W was a comparative list of properties and their values on the date of the parties’ prenuptial agreement and again on the date of filing of the dissolution of marriage. The Husband argues that this was simply a demonstrative exhibit, yet it was admitted into evidence during the trial and this Court has relied upon it for its accuracy and in so doing appears to have made a mistake.
 

 10. After listening to the testimony during the hearing on the Former Wife’s Motion, the Court found that several properties were owned at the time of the marriage, were still owned or in the Former Husband’s possession or control at the time of filing the dissolution, had a value and were not listed on Exhibit W.
 

 11. The Former Husband argued that he didn’t list them on Exhibit W because the form of ownership changed, i.e. to another corporation. However this was never presented to the Court at the time of trial. Further, this Court ruled at trial that properties owned by the Former Husband were “... regularly in play and interrelated to all other properties ...” and were “... so intermingled that the increase should be all marital ...”
 

 12. The Court finds that it did not have the full benefit of all of the information from the Husband on Exhibit W upon which this Court relied.
 

 13. The Court finds that as to some properties listed on Exhibit “W”, the Former Husband did in fact have some ownership interest at the date of the filing of the divorce. Those properties were not listed as of the date of filing on Exhibit “W”. This includes 92nd Avenue, Tract 12, Trac[t] 57, 10 Acres— HG/TR 12, 20 Acres — HG/TR 15 + 16, Les Fountain, 70 Lots — HG/Garden Development, 55 Lots — HG/TR 9. Some may have an increased value, others not, and still others may actually not be in existence at the time of filing, but the Court needs to take testimony in this regard.
 

 14. The Husband testified that he was not sure of the exact evolution of some of the properties and that his assistant Lucy Suero would have the information.
 

 15.... The Court should have included those and any others that belong on the list in the Final Judgment of Dissolution of Marriage, but more importantly in the Order on Remand.
 

 16. This Court requests that The Third District Court of Appeal relinquish jurisdiction to allow this Court to make a determination as to the value of those additional properties that should have been included on Exhibit “W” as of the date of filing [
 
 (“the Omitted Assets
 
 ”) ] and to determine whether the appreciation in those properties was active or passive.
 

 (Emphasis added).
 

 Jurisdiction was relinquished for the reasons set forth by the trial court.
 

 
 *11
 
 The Second Remand
 

 Following this court’s second remand, the trial court held a hearing at which only one witness testified: Lucy Suero, the former husband’s longtime bookkeeper. Relying on the former husband’s 2001 financial affidavit (which he represented as accurately representing the value of his assets when the petition for dissolution was filed), Exhibit W, schedule C to the parties’ prenuptial agreement and the former husband’s April 2008 affidavit, the former wife demonstrated that the Omitted Assets had significantly increased in value during the marriage.
 

 The former husband, unlike the former wife, disregarded the trial court’s prior order precluding presentation of new evidence and, over objection, introduced a chart, the “Suero Summary,” a document purportedly representing the enhanced valuation of the Omitted Assets. Based upon this new evidence, which showed that the Omitted Assets did not enhance in value, but actually lost value, during the parties’ marriage, the court below concluded that the former wife was entitled to no further distributions.
 
 [2]
 
 In these consolidated appeals, the former wife appeals from the zero enhancement valuation given the Omitted Assets and the trial court’s decision that no further distributions of these assets were warranted.
 

 Analysis
 

 We agree with the former wife that the zero enhancement valuation and distribution determinations made below regarding the Omitted Assets are wholly without support. They are without support because the single document on which they are based, the Suero Summary, should not have been admitted into evidence and because this summary is facially and woefully inaccurate by over $1,000,000.
 

 Simply put, the Suero Summary should not have been admitted into evidence because it violated the trial court’s earlier decree that only evidence considered at the 2001 divorce trial would be considered in determining the enhanced value of the former husband’s premarital assets. The summary did not exist at the time of the divorce trial and, as conceded at oral argument, the information detailed in it did not come, as represented by the former husband’s counsel below, from tax returns or other evidence introduced into evidence at the divorce trial.
 
 [3]
 
 This document should not, therefore, have been admitted into evidence and should have played no part in the trial court’s enhancement valuation determination.
 

 It also should not have been admitted because the former wife was given
 
 *12
 
 insufficient notice of it. This detailed summary was handed to counsel for the former wife for the first time only minutes before the Omitted Asset hearing was to begin. A cursory examination of the document itself, which lists fifty individual lots followed by rows of numbers purporting to represent: (1) the lot’s pre-nuptial fair market value; (2) the lot’s associated construction costs; (3) the combination of the pre-nuptial value and construction costs for the lot; (4) the lot’s fair market value in 2000; and (5) each lot’s purported enhanced value as of the date of the divorce, confirms that no meaningful review of it could have been made in time to question its origin or accuracy. Indeed, the proof of this comes with the aid of a calculator and significant peace and quiet, which reveals that the enhanced values stated in this summary were derived, in part, by
 
 incorrectly
 
 deducting the premarital value of each lot
 
 twice
 
 from its 2000 fair market value.
 
 [4]
 
 This simple mathematical error resulted in more than a million dollar error in the enhancement value of the Omitted Assets which, if corrected, would have shown the cumulative enhanced value of the Omitted Assets was, at a minimum, $1,046,679 and not a net loss of $108,881.
 
 [5]
 
 Needless to say, this mode of proceeding was highly prejudicial and should not have been countenanced.
 
 See Agrofollajes, S.A. v. E.I. Du Pont De Nemours & Co.,
 
 48 So.3d 976, 994 (Fla. 3d DCA 2010) (recognizing that the rules of civil procedure are intended to avoid surprise and trial by ambush and that cases should be determined on the facts “rather than gamesmanship, surprise, or superior trial tactics” (quoting
 
 Binger v. King Pest Control,
 
 401 So.2d 1310, 1313 (Fla.1981)));
 
 S.Z. v. Dep’t of Children & Family Servs.,
 
 873 So.2d 1277 (Fla. 3d DCA 2004) (finding that providing an incomplete discovery packet late in the day on Friday before a Monday hearing constituted an impermissible trial by ambush resulting in a denial of due process). Thus, even if the particulars of the summary were in accord with the trial judge’s prior evidentiary ruling, it should not have been admitted without providing counsel for the former wife with an adequate opportunity to examine it.
 

 In short, the Suero Summary was not only improperly admitted into evidence, but also wholly inaccurate; therefore, it provides no support for the trial court’s Omitted Asset enhancement valuation.
 

 That is not to say that there is no evidence in the record from which the enhanced value of the Omitted Assets may be ascertained. In accordance with its prior rulings, the court below had before it
 
 *13
 
 competent and substantial evidence from the divorce trial in the form of the former husband’s Exhibit W, his 2001 financial affidavit and schedule C to the parties’ prenuptial agreement.
 
 [6]
 
 These documents demonstrate that the former husband’s premarital assets had significantly increased in value during the marriage. In fact, comparing the value of the Omitted Assets
 
 [7]
 
 in 1991 as represented in these documents (by the former husband’s own figures valued at $3,743,151 less liabilities of $2,606,348), with the value of those same assets in 2000 (by the former husband’s own figures valued at $9,012,707 less liabilities of $2,129,765), the enhanced value of the Omitted Assets exceeded $5 million.
 
 [8]
 

 See Dyson v. Dyson,
 
 597 So.2d 320, 324 (Fla. 1st DCA 1992) (citing
 
 Crapps v. Crapps,
 
 501 So.2d 661, 665 (Fla. 1st DCA 1987), and instructing that in evaluating the enhanced value of a party’s non-marital asset for equitable distribution purposes the court should consider: “(1) the value of [that party’s] equity in the property prior to the marriage; (2) the value of the property as of the petition filing date, unless another valuation date was specified to be more just and equitable under the circumstances; (3) the extent to which the value of the [ ] property was enhanced by causes other than the parties’ contribution of marital funds and labor; and (4) the extent to which value of the [] property was enhanced by the use of marital funds and labor”);
 
 see generally
 
 Equitable Distribution, Enhancement In Value And Appreciation Of Nonmarital Assets, FACS FL-CLE 6-1 § I.A.2. (2010).
 

 We therefore reverse the Final Order on Hearing Dated March 10, 2009 and remand with instructions to recalculate the enhanced value of the Omitted Assets based on evidence introduced at the 2001 divorce trial. On remand, the trial court shall set out in its order the value of each premarital property at the time the prenuptial agreement was entered and at the time the petition was filed and shall state the enhanced value of each for equitable distribution.
 
 [9]
 
 This includes not only the Omitted Assets, but also the assets previously valued by the court below in the Order on Remand from District Court of Appeal. Should the court decide to distribute the enhanced value of these assets unequally between the parties, it shall state its reasons for doing so, and the record support for same, in the final order.
 
 [10]
 

 See
 
 § 61.075(1), Fla. Stat. (2010)
 
 *14
 
 (providing “in a proceeding for dissolution of marriage ... the court shall set apart to each spouse that spouse’s non-marital assets and liabilities, and in distributing the marital assets and liabilities between the parties, the court must begin with the premise that the distribution should be equal, unless there is a justification for an unequal distribution based on all relevant factors, including [those listed herein]”).
 

 Reversed and remanded with instructions.
 

 [1]
 

 . The trial court entered this order, titled “Order on Remand from District Court of Appeal,” on October 26, 2006.
 

 [2]
 

 . The trial court entered this order, titled "Final Order on Hearing Dated March 10, 2009," on April 27, 2009.
 

 [3]
 

 . At oral argument, counsel for the former husband admitted that the tax returns relied on to prepare this summary were not part of the evidence at the divorce trial. Moreover, while counsel for the former husband justified admission of this summary at the hearing below on the ground that it was based, in part, on information culled from the former wife’s expert’s report, the hearing transcripts reflect this report was not admitted into evidence at the former husband’s insistence. Having kept this document out, the former husband was in no position to invoke and rely on it to support either this summary or his case. See
 
 Hernandez v. State,
 
 749 So.2d Í284, 1286 (Fla. 3d DCA 2000) (observing that the defendant had " ‘hoisted himself on his own petard,' ” having made a tactical decision and then reaped the benefits of it);
 
 Cole v. Angora Enters., Inc.,
 
 403 So.2d 1010, 1012 (Fla. 4th DCA 1981) (”[T]he developer-lessor should not expect to be able to invoke the ‘from time to time' language when it suits its purpose to do so and reject it when not to its taste and advantage. The developer-lessor has quite simply been hoisted on its own petard by these particular amendments.”).
 

 [4]
 

 . Counsel for the former husband was unable, when questioned at oral argument, to supply or suggest a reason for twice deducting the premarital value of each parcel.
 

 [5]
 

 . For example, as to the fourteen lots purportedly still owned by the former husband at the 92nd Avenue property (one of the Omitted Assets), the Suero Summary shows a net enhancement value in the amount of only $2,313 per lot at the time of the divorce:
 

 [[Image here]]
 

 [[Image here]]
 

 The only way to achieve this $2313 net enhancement result is to deduct the sum of the prenuptial land cost and the construction cost ($11,777 + $83,699 = $95,276) from the 2000 value ($109,366 — $95,276 = $14,090), and then to reduce this amount
 
 again
 
 by the premarital land value ($14,090 — $11,777 = $2313). The reason for this double dip is nowhere explained and could not be justified at oral argument and in all respects appears to be wholly inappropriate.
 
 See Cox v. Cox,
 
 10 So.3d 180, 182 (Fla. 2d DCA 2009) (reversing alimony award and remanding where trial court had "double-counted” certain expenses).
 

 [6]
 

 . In light of this evidence from the divorce trial, we see no valid reason why the court below chose to rely on documents not in evidence at the divorce trial or documents that should not have been admitted. The former husband repeatedly represented that his 2001 financial affidavit contained the most accurate valuation of his assets from 1998 through 2001. And, Exhibit W was merely a summary of that affidavit which the trial court relied on in determining the enhanced value of the former husband’s thirteen
 
 other
 
 premarital properties on remand.
 

 [7]
 

 . In his April 2008 affidavit, the former husband identified the numerous properties listed on his 2001 Financial Affidavit that he claimed made up the Omitted Assets.
 

 [8]
 

 . This court does not presume to determine the enhanced value of the Omitted Assets for the court below, but only to demonstrate that the enhanced value of the Omitted Assets is not zero as determined by the court below.
 

 [9]
 

 . We further note that this court already has determined that "the enhancement value of the non-marital properties was the result of marital labor from both parties.”
 
 Valdes I,
 
 894 So.2d at 267.
 

 [10]
 

 . In the Final Judgment of Dissolution of Marriage, the former wife was awarded ten percent of the enhanced value of his premarital assets (an amount there determined to be over $8,000,000). On appeal, this court affirmed the trial court's determination that the former husband was entitled to an unequal
 
 *14
 
 distribution of the enhancement valuation based on the reasons set forth in the final judgment, but did not presume to approve a particular assigned percentage on remand.
 
 Valdes I,
 
 894 So.2d at 268. In the Order on Remand from District Court of Appeal, the court below, without explication, awarded the former wife fifteen percent of the newly determined enhanced value of the former husband's premarital assets. On the record before us, we are unable to discern, and counsel for the former husband was at a loss to explain, how these percentages were derived and, thus, whether they comply with the mandates of section 61.075(1) of the Florida Statutes.