# Supreme Court of Florida

_____

No. SC14-277
_____

**DIANNE L. HAHAMOVITCH N/K/A DIANNE LYNN HAHAMOVITCH,**
Petitioner,

vs.

**HARRY H. HAHAMOVITCH,**
Respondent.

[September 10, 2015]

POLSTON, J.

We review the decision of the Fourth District Court of Appeal in

Hahamovitch v. Hahamovitch, 133 So. 3d 1008, 1016 (Fla. 4th DCA 2014), in

which the Fourth District certified conflict with the decisions of the Second

District in Irwin v. Irwin, 857 So. 2d 247 (Fla. 2d DCA 2003), and the Third

District in Valdes v. Valdes, 894 So. 2d 264 (Fla. 3d DCA 2004). Additionally,

the Fourth District ruled upon the following question, which it certified to be of

great public importance:

> Where a prenuptial agreement provides that neither spouse will ever
> claim any interest in the other's property, states that each spouse shall
> be the sole owner of property purchased or acquired in his or her
> name, and contains language purporting to waive and release all rights

and claims that a spouse may be entitled to as a result of the marriage, do such provisions serve to waive a spouse's right to any share of assets titled in the other spouse's name, even if those assets were acquired during the marriage due to the parties' marital efforts or appreciated in value during the marriage due to the parties' marital efforts?

Hahamovitch, 133 So. 3d at 1017.[1]  For the reasons expressed below, we approve the Fourth District's decision in Hahamovitch and answer the certified question in the affirmative.

## BACKGROUND

On January 20, 1986, before their marriage, Dianne and Harry Hahamovitch entered into a prenuptial agreement.  Around the time that the parties were entering into the prenuptial agreement, the husband was 46 years old and the wife was 28 years old.  They were married on February 16, 1986, and remained married for 22 years.  Two children were born out of the marriage.  On February 6, 2008, they filed for dissolution of marriage.

The prenuptial agreement provided in pertinent part:

> 2. DIANNE'S RELEASE.  Except as otherwise provided for herein, in the event either of the Parties hereto institutes legal proceedings for . . . dissolution of marriage . . . , DIANNE hereby waives and releases, and is hereby barred from any and all rights and claims of every kind, nature and description that she may acquire or to which she may be entitled under the laws of any jurisdiction as a result of the marriage between the Parties, in and to any of HARRY's property, including, but without intending thereby to limit the

---

1. We have jurisdiction.  See art. V, § 3(b)(4), Fla. Const.

- 2 -

generality of the foregoing, any and all right to alimony, either lump sum, rehabilitative, permanent, or otherwise, support and maintenance, equitable distribution, division of property, special equities, attorney's fees, or any other rights that DIANNE may have against HARRY relative to financial issues.

5. <u>RETENTION OF SOLE PROPERTY</u>.  Except to the extent that the Parties may otherwise desire, HARRY and DIANNE shall, during their respective lifetimes, keep and retain sole ownership, control, enjoyment and power of disposition with respect to all property, real, personal or mixed, now owned or hereby acquired by each of them respectively, free and clear of any claim by the other. . . .

9. <u>MUTUAL RELEASE</u>.  In consideration of the marriage of the Parties to each other, and in consideration of the other provisions herein contained, each party agrees that neither will ever claim any interest in the other's property and that the property of every kind, nature and description which either one has on the date of the[ir] marriage will remain the respective separate property of each after said marriage, and each agrees not to make any claim against the property of the other . . . .

17. <u>TITLE PRESUMPTIONS</u>.  It is additionally understood that if HARRY purchases, acquires, or otherwise obtains, property and title to said property is in HARRY's name with DIANNE and no explanation is made as to the percentages of interest that either party has, then it shall be presumed that they shall be 50%-50% owners of said property.  If HARRY purchases, [a]cquires, or otherwise obtains, property in his own name, then HARRY shall be the sole owner of same.  If DIANNE purchases property in her name, then DIANNE shall be the sole owner of same.

Id. at 1012 (alterations in the original but emphasis omitted).

The Fourth District upheld the trial court's conclusion that the prenuptial agreement was valid.  Id. at 1011.  Specifically, as the trial court's order stated, "the parties prenuptial agreement was entered into freely and voluntarily[, b]oth parties had legal counsel throughout its preparation and execution stages[, t]here were multiple drafts of the prenuptial agreement prior to signing the final contract[,

- 3 -

and] their lawyers and their accountants expended great effort in drafting a prenuptial agreement that was fair, reasonable and one that [w]ife and [h]usband intended to be bound by." Additionally, the Fourth District "conclude[d] that the prenuptial agreement was fair when it was entered into," noting that under the terms of the agreement, "[b]ased on the length of the marriage, which lasted over twenty years, the wife was entitled to receive about $1.9 million paid out over seven years." Id. at 1011 n.2.

Furthermore, the Fourth District concluded that "[t]he language of the agreement was broad enough to waive the wife's right to any asset titled in the husband's name that was acquired during the marriage or that appreciated in value due to marital income or efforts during the marriage." Id. at 1015. However, the Fourth District explained that other district courts have interpreted prenuptial agreements with substantially similar language to be insufficient to waive a spouse's claim to the other spouse's earnings, assets acquired with those earnings, and the enhanced value of the other spouse's nonmarital property resulting from marital labor or funds. Id. at 1013-16 (citing Irwin, 857 So. 2d 247; Valdes, 894 So. 2d 264).

## ANALYSIS

The wife argues that, because the prenuptial agreement makes no specific reference to enhancement in value of nonmarital property attributable to marital

labor or funds, the enhanced value is subject to equitable distribution. Similarly, she also argues that, because the prenuptial agreement does not contain a specific provision that the husband's earnings will be his separate property, they are not protected assets.[2] However, because the broad language in the prenuptial agreement includes a waiver and release of all rights and claims to the other spouse's nonmarital property, we disagree.

Chapter 61, Florida Statutes, governs the dissolution of marriage. Section 61.079(4)(a) provides that "[p]arties to a premarital agreement may contract with respect to . . . [t]he disposition of property upon . . . marital dissolution." And section 61.075, Florida Statutes, addresses the "[e]quitable distribution of marital assets and liabilities." This section describes what constitutes marital assets and liabilities. § 61.075(6), Fla. Stat. Nonmarital assets and liabilities include those "excluded from marital assets and liabilities by valid written agreement of the parties." § 61.075(6)(b) 4., Fla. Stat.

"A trial court's interpretation of a prenuptial agreement is reviewed de novo, as such agreements are governed by the law of contracts." Taylor v. Taylor, 1 So.

---

2. The wife also argues that the trial court erred in curtailing discovery as to any commingled funds or jointly owned property. However, the trial court did allow discovery to assets in which the wife may have had an interest in and, based on the trial court's accurate interpretation of the prenuptial agreement, the additional requested discovery would be unnecessary and irrelevant. Therefore, the trial court did not abuse its discretion in limiting discovery.

3d 348, 350 (Fla. 1st DCA 2009). Where a contract is clear and unambiguous, it must be enforced pursuant to its plain language. See Crawford v. Barker, 64 So. 3d 1246, 1255 (Fla. 2011). "In such a situation, 'the language itself is the best evidence of the parties' intent, and its plain meaning controls.' " Id. (quoting Richter v. Richter, 666 So. 2d 559, 561 (Fla. 4th DCA 1995)).

In the valid prenuptial agreement in this case,[3] the wife waived and released any and all rights and claims to all property solely owned by the husband at the time of the agreement or acquired in the future. Specifically, the parties contracted that each party would "keep and retain sole ownership, control, enjoyment and power of disposition with respect to all property, real, personal or mixed, now owned or hereby acquired by each of them respectively, free and clear of any claim by the other," that "each party agrees that neither will ever claim any interest in the other's property," and if one party "purchases, [a]cquires, or otherwise obtains, property in [his/her] own name, then [that party] shall be the sole owner of same." Accordingly, based on the plain meaning of this language, any property the husband owned at the time of execution of the premarital agreement and any property the husband acquired in his name after the execution of the agreement,

---

3. The Fourth District accurately upheld the conclusion that the prenuptial agreement in this case was valid. See Casto v. Casto, 508 So. 2d 330, 333 (Fla. 1987).

including any enhancement in value or appreciation of such properties, are the husband's nonmarital assets.

When a prenuptial agreement includes such broad provisions but does not specifically waive a spouse's claim to the other spouse's earnings, assets acquired with those earnings, and the enhanced value of the other spouse's property resulting from marital labor or funds, the Second and Third Districts have held the prenuptial agreement is not sufficient to waive a spouse's right to seek equitable distribution of such assets. See Irwin, 857 So. 2d at 248-49; Valdes, 894 So. 2d at 267. However, these distinctions run counter to a prenuptial agreement's actual language that expressly encompasses all property solely owned by one spouse presently and in the future and that expressly waives all of the other spouse's rights and claims in such property.

## CONCLUSION

For the reasons expressed above, we approve the Fourth District's decision in Hahamovitch, disapprove Irwin and Valdes to the extent they conflict with this decision, and answer the certified question in the affirmative.

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, QUINCE, CANADY, and PERRY, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

Application for Review of the Decision of the District Court of Appeal - Certified Direct Conflict of Decisions

     Fourth District - Case No. 4D10-3051

     (Palm Beach County)

Jeanne Cleary Brady and Frank Ronald Brady of Brady & Brady, P.A., Boca Raton, Florida; Robert W. Sidweber and Karen Beth Weintraub of Sidweber & Weintraub, P.A., Fort Lauderdale, Florida,

     for Petitioner

Jane Kreusler-Walsh, Rebecca Mercier Vargas, and Stephanie L. Serafin of Kreusler-Walsh, Compiani & Vargas, P.A., West Palm Beach, Florida; Joel Michael Weissman and Sarah Allison Saull of Joel Weissman, P.A., West Palm Beach, Florida,

     for Respondent