IN THE SECOND DISTRICT COURT OF APPEAL, LAKELAND, FLORIDA

March 30, 2016

ANTHONY FELICE,                          )
                                         )
            Appellant,                   )
                                         )
v.                                       )    Case No. 2D14-2862
                                         )
MELISSA FELICE,                          )
                                         )
            Appellee.                    )
                                         )
_____  )


BY ORDER OF THE COURT:

        The appellee's motion for rehearing is granted.  The prior opinion dated

December 30, 2015, is withdrawn, and the attached opinion is substituted therefor.  No

further motions for rehearing or clarification will be considered.


I HEREBY CERTIFY THE FOREGOING IS A
TRUE COPY OF THE ORIGINAL COURT ORDER.



MARY ELIZABETH KUENZEL
CLERK

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

ANTHONY FELICE,                          )
                                         )
            Appellant,                   )
                                         )
v.                                       )   Case No. 2D14-2862
                                         )
MELISSA FELICE,                          )
                                         )
            Appellee.                    )
                                         )
_____)

Opinion filed March 30, 2016.

Appeal from the Circuit Court for Collier
County; Christine Greider, Judge.

Anthony Felice, pro se.

No appearance for Appellee.


MORRIS, Judge.

            Anthony Felice, the former husband, appeals an amended final judgment

of dissolution of marriage.  He raises numerous issues on appeal, but we find merit to

only two.  First, the trial court erred in including a portion of the value of the former

husband's premarital home as a marital asset in the equitable distribution scheme.

Second, the trial court erred in failing to incorporate into the amended final judgment the

amended parenting plan that the trial court ordered on rehearing from the original final

judgment.  We reverse the amended final judgment as to these two issues, but we

affirm the remainder of the amended final judgment.[1]

**I. Prenuptial Agreement Regarding the Former Husband's Premarital Home**

In May 2000, before they were married, the parties executed a prenuptial agreement that solely addresses the parties' rights to a premarital home owned by the former husband:

> 1.  The Prospective groom, ANTHONY FELICE, shall, not with standing [sic] any dissolution proceedings or law applicable thereto, at any time, and in any jurisdiction, be entitled to any and all equity and rights of ownership in his home located [on Marco Island, Florida].  Said property shall be always and forever pursuant to agreement of the parties, remain pre-marital property.  At no time shall MELISSA A[.] CUNNINGHAM, be entitled to any interest in said home unless such right is granted with the same formality as the instant instrument[.]
> 2.  The Prospective bride shall, not withstanding [sic] any dissolution proceeding, at any time in any jurisdiction, NOT be entitled to any interest in the Pre-Marital home of the Husband located [on Marco Island].

In the amended final judgment of dissolution, the trial court concluded that the prenuptial agreement is enforceable.  The trial court further found that the language of the agreement does not prevent the former wife from claiming an interest in the former husband's premarital home:

> The Court finds that the Prenuptial Agreement fails to specifically address whether or not the provisions of the agreement apply to the enhanced value of [the former

---

[1]We note that the former husband has failed to provide a complete transcript of the hearings below.  Our review of these two issues, however, is not hindered by the lack of a complete record because the errors are legal errors apparent from the face of the amended final judgment.  See Chirino v. Chirino, 710 So. 2d 696 (Fla. 2d DCA 1998) ("[E]ven where the appellant fails to provide a transcript, the absence of a transcript does not preclude reversal where an error of law is apparent on the face of the judgment.").

- 2 -

husband's] premarital property that resulted from the contribution of marital funds or labor.

The Agreement does not define what is pre-marital and has no reference to what assets are "nonmarital." In short, the agreement fails to specifically exclude the active enhancement of the [former husband's] premarital asset from equitable distribution. Specifically, the Court finds that the language contained in Paragraph (1) of the prenuptial agreement . . . does not constitute a complete waiver of marital enhancement. . . .

Similarly, Paragraph (2) of the Prenuptial Agreement reflects the [former wife] not being entitled to any interest in the Pre-Marital home of the [former husband]. The Court interprets this . . . as prohibiting the Court from using the [former husband's premarital] home as security for the equalizing payment, as doing so would improperly be giving the [former wife] an "interest" in the home.

The Court finds that the Prenuptial Agreement is silent to the definition of nonmarital assets and altogether fails to address and exclude the enhanced value of the nonmarital asset resulting from marital efforts or marital income or earnings used to enhance the value of the [former husband's] premarital home.

In short, the language of the enforceable Prenuptial Agreement protects the [former husband's] premarital asset (his home), but does not protect the enhancement or appreciation of the value of the home during the marriage, as a result of marital income or efforts.

The trial court found that the home had a fair market value of $365,000 at the time of filing. The trial court further found that the parties had used marital funds during the course of the marriage to pay down both a home equity line of credit (HELOC) and a mortgage on the home and that the enhancement in value that occurred as a result ($167,507) was a marital asset. The trial court also found that the fair market value of the home had appreciated $55,000 during the marriage and that the marital share of that appreciation was $29,719. The trial court found that the total marital interest in the home was $197,226. The trial court counted this amount ($197,226) as a marital asset in the equitable distribution schedule, and the trial court

counted the premarital value of the home ($167,774) as a nonmarital asset belonging to the former husband.

On appeal, the former husband contends that trial court erred in including the appreciation of the former husband's premarital home as a marital asset in the equitable distribution schedule. He argues that the prenuptial agreement clearly provides that the former husband is entitled to any and all equity in his premarital home, including any enhanced value and appreciation, and that the former wife is not entitled to any interest or equity in the former husband's premarital home.

In the amended final judgment of dissolution, the trial court relied on four cases from this court, including Irwin v. Irwin, 857 So. 2d 247 (Fla. 2d DCA 2003). In Irwin, this court held that the trial court erred in its interpretation of the prenuptial agreement entered into by the parties. In the agreement, the wife waived and released all rights in the property and estate of the husband, whether he owned it prior to marriage or acquired it during marriage and regardless of title. Id. at 248. The trial court concluded "that, as a consequence of these provisions, there was no marital property to divide." Id. On appeal, this court concluded that the trial court engaged in an "overbroad application of the waivers contained in the agreement." Id.

> The agreement did not specifically reserve [the husband's] marital earnings as his separate property, and thus did not exclude [the wife's] claim to share in the value of assets purchased with those earnings. Nor did the agreement waive [the wife's] claim to her rightful share of the marital asset consisting of the enhanced value of [the husband's] separate property that resulted from the contribution of marital funds or labor.

Id. at 248-49 (citations omitted) (emphasis added). This court's opinion in Irwin was recently disapproved of by the Florida Supreme Court.

- 4 -

In Hahamovitch v. Hahamovitch, 174 So. 3d 983 (Fla. 2015), the supreme court approved a decision by the Fourth District holding that the broad language of the prenuptial agreement waived "the wife's right to any asset titled in the husband's name that was acquired during the marriage or that appreciated in value due to marital income or efforts during the marriage."  Id. at 986 (quoting Hahamovitch v. Hahamovitch, 133 So. 3d 1008, 1015 (Fla. 4th DCA 2014)).

> In the valid prenuptial agreement in this case, the wife waived and released any and all rights and claims to all property solely owned by the husband at the time of the agreement or acquired in the future.  Specifically, the parties contracted that each party would "keep and retain sole ownership, control, enjoyment and power of disposition with respect to all property, real, personal or mixed, now owned or hereby acquired by each of them respectively, free and clear of any claim by the other," that "each party agrees that neither will ever claim any interest in the other's property," and if one party "purchases, [a]cquires, or otherwise obtains, property in [his/her] own name, then [that party] shall be the sole owner of same."  Accordingly, based on the plain meaning of this language, any property the husband owned at the time of execution of the premarital agreement and any property the husband acquired in his name after the execution of the agreement, including any enhancement in value or appreciation of such properties, are the husband's nonmarital assets.

Id. at 986-87 (footnote omitted).  The supreme court then briefly addressed the two cases with which the Fourth District had certified conflict: Irwin, 857 So. 2d 247, and Valdes v. Valdes, 894 So. 2d 264 (Fla. 3d DCA 2004):

> When a prenuptial agreement includes such broad provisions but does not specifically waive a spouse's claim to the other spouse's earnings, assets acquired with those earnings, and the enhanced value of the other spouse's property resulting from marital labor or funds, the Second and Third Districts have held the prenuptial agreement is not sufficient to waive a spouse's right to seek equitable distribution of such assets.  See Irwin, 857 So. 2d 248-49;

- 5 -

> *Valdes*, 894 So. 2d at 267. However, these distinctions run counter to a prenuptial agreement's actual language that expressly encompasses all property solely owned by one spouse presently and in the future and that expressly waives all of the other spouse's rights and claims in such property.

*Hahamovitch*, 174 So. 3d at 987. The supreme court disapproved *Irwin* and *Valdes* "to the extent they conflict with this decision." *Id.*[2]

The agreement in this case provides that the husband shall be entitled to any and all equity in his premarital home and that the wife shall not be entitled to any interest in the husband's premarital home unless granted such interest in a formal, written instrument. Even though the agreement does not specifically refer to any right to the appreciation or enhancement of the former husband's premarital home, the broad language of the agreement expressly waives the former wife's rights and claims in the property and is considered to include the appreciated or enhanced value of the property that occurs during the marriage. In light of the supreme court's *Hahamovitch* decision and by virtue of its disapproval of *Irwin* and *Valdes*, we must reverse the trial court's interpretation of the prenuptial agreement in this case and remand for the trial court to recalculate the equitable distribution scheme after excluding the $197,226 amount that represents the appreciated or enhanced value of the former husband's premarital home. On remand, the trial court may revisit the interrelated issue of attorney's fees. *See*

---

[2]In *Valdes*, the wife asserted that "she was entitled to the enhanced value of [the husband's] non-marital property" despite having signed a prenuptial agreement waiving her right to the husband's nonmarital property. 894 So. 2d at 266. The trial court ruled that because there was no "specific waiver of the enhanced value to non-marital property in the prenuptial agreement, the enhancement value of the non-marital assets resulting from marital efforts were subject to equitable distribution." *Id.* Relying in part on *Irwin*, the Third District concluded that because the prenuptial agreement does not address enhancement value, the "trial court properly found that [the wife] did not waive her right to seek equitable distribution of the enhanced value of the non-marital properties, despite the prenuptial agreement." *Id.* at 267.

Conner v. Conner, 439 So. 2d 887, 887 (Fla. 1983); Santiago v. Santiago, 51 So. 3d 637, 639 (Fla. 2d DCA 2011).

### II. Amended Parenting Plan

The former husband argues that the trial court modified the parenting plan in its order on motions for rehearing but failed to implement the new parenting plan in the amended final judgment.  His contention is supported by the record.  Paragraph 4 of the original final judgment addressed the parenting plan adopted by the trial court, and a parenting plan was attached to the original final judgment.  The parties then filed motions for rehearing.  The trial court entered an order on rehearing, making the following findings and conclusions with regard to the parenting plan:

> The provisions of the Parenting Plan shall be revised, in order to clarify that there is a regular and ongoing timesharing schedule to be implemented when the Former Husband is in Collier County.  Accordingly, Section VII. Paragraph A of the Parenting Plan shall be stricken. Paragraph B. iv. will be moved to the top to as [sic] Paragraph A and shall be re-worded so that this is the regular schedule.  The Notice requirements shall be amended, so that when the Former Husband is gone from Collier County for more than 21 days, [he] should give the Former Wife 14 days-notice of when he will be returning and for how long he is returning.  Further, the Former Husband must provide the Former Wife with as much notice as possible in advance of his leaving, to allow her to properly plan for his absence.

Despite this language in the order on rehearing, the language of the amended final judgment addressing the parenting plan in paragraph 4 remained the same as the language in paragraph 4 of the original final judgment.  In addition, the parenting plan attached to the amended final judgment is the same parenting plan that was attached to the original final judgment and does not reflect the changes ordered by the trial court in

the order on rehearing.  Accordingly, we reverse the amended final judgment to the extent that the parenting plan language and attached parenting plan are inconsistent with the trial court's rulings on rehearing.  On remand, the trial court shall amend the amended final judgment and the parenting plan to reflect its rulings in paragraph L of the order on rehearing.

Affirmed in part; reversed in part; remanded with directions.

KHOUZAM and BADALAMENTI, JJ., Concur.