[Cite as *Burdick v. Burdick*, 2014-Ohio-2876.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| LORI K. BURDICK, | : | **O P I N I O N** |
| Plaintiff-Appellant/ Cross-Appellee, | : | |
| | : | **CASE NO. 2013-A-0030** |
| - vs - | : | |
| | : | |
| DUANE R. BURDICK, | : | |
| Defendant-Appellee/ Cross-Appellant. | : | |

Civil Appeal from the Ashtabula County Court of Common Pleas, Case No. 2010 DR 35.

Judgment: Affirmed in part, reversed in part, and remanded.

*William P. Bobulsky*, William P. Bobulsky Co., L.P.A., 1612 East Prospect Road, Ashtabula, OH 44004 (For Plaintiff-Appellant/Cross-Appellee).

*Robert P. DeMarco*, DeMarco & Triscaro, LTD., 30505 Bainbridge Road, Suite 110, Solon, OH 44139 (For Defendant-Appellee/Cross-Appellant).

TIMOTHY P. CANNON, P.J.

{¶1} Lori K. Burdick, appellant/cross-appellee, appeals from the May 9, 2013 final judgment entry and decree of divorce of the Ashtabula County Court of Common Pleas. For the following reasons, we affirm in part, reverse in part, and remand the matter for further proceedings consistent with this opinion.

{¶2} Lori married Duane R. Burdick, appellee/cross-appellant, on March 15, 1997, and the couple divorced on March 31, 2010. Prior to marrying, Duane and Lori

entered into an antenuptial agreement. The agreement was signed by both parties on March 14, 1997, and designated which real and personal property of Duane and Lori was to remain separate.

{¶3} Pursuant to the agreement, Duane and Lori each disclaimed "any and all rights, title and interest therein arising by operation of the intended marriage of the parties" in all separately owned property. Included in Duane's list of separate property were "shares of Stock of Burdick & Lauer Plumbing and Heating Inc." and a piece of real property from which he ran his plumbing business ("Harbor Street Property"). When the parties married, the Harbor Street Property was valued at $350,000 and was subject to a mortgage with a balance of $104,393. This balance was paid in full while the parties were married. A second mortgage for $30,000 also encumbered the Harbor Street Property and was paid in full during the time the parties were married.

{¶4} On February 1, 2010, Lori filed a complaint seeking divorce from Duane. Hearings were held in front of a magistrate on June 29, 2011; September 9, 2011; and September 27, 2011. On November 23, 2011, the magistrate's decision was filed. Both Duane and Lori filed objections to the magistrate's decision, and a hearing on the objections was held on February 8, 2012.

{¶5} On November 21, 2012, the trial court filed a judgment entry ruling on the objections to the magistrate's decision. The trial court rejected all but one objection: the court sustained Duane's objection regarding the mortgages on the Harbor Street Property. In the relevant part of the judgment, the trial court stated:

> IT IS, THEREFORE, ORDERED that the Magistrate's holding regarding the non-passive increases in the Company's value was an abuse of discretion, and Husband's objection is sustained. The mortgage reductions in the amount of $104,393 for the original

2

mortgage on the Property and the later mortgage reduction in the amount of $30,000 are held to be Husband's separate property. IT IS FURTHER ORDERED that Wife's objection is overruled, and the Magistrate's holding that the Company's business inventory, including the motor vehicles, is Husband's separate property is upheld.

**{¶6}** On May 9, 2013, the trial court issued a final decree of divorce. Timely notices of appeal and cross-appeal were filed by both parties.

**{¶7}** On appeal, both Duane and Lori set forth two assignments of error. Lori's first assignment of error states:

**{¶8}** "The trial court erred in granting the objection by Defendant-Appellee to the Magistrate's Decision of November 23, 2011, in determining that marital mortgage reductions totaling $134,393 were Defendant-Appellee's separate property."

**{¶9}** The trial court must determine the proper characterization of property as either separate or marital. *Iacampo v. Oliver-Iacampo*, 11th Dist. Geauga No. 2011-G-3026, 2012-Ohio-1790, ¶16. In the absence of an antenuptial agreement, courts rely on R.C. 3105.171 to properly determine the character of the property and then, upon making such a determination, to "divide the marital and separate property equitably between the spouses." R.C. 3105.171(B). "A trial court's characterization of property as separate or marital will be upheld when the record contains some competent credible evidence to support the trial court's conclusion." *Iacampo* at ¶17, citing *Bizjak v. Bizjak*, 11th Dist. Lake No. 2004-L-083, 2005-Ohio-7407, ¶10.

**{¶10}** Here, the magistrate originally found the two mortgage reductions on the Harbor Street Property were marital property. This determination was premised upon the magistrate's reasoning that the antenuptial agreement did not require the finding

3

"that nonpassive appreciation in the parties' separate property accumulates after the marriage itself is separate property * * *." As such, the magistrate determined that the parties' antenuptial agreement did not address non-passive increases in separate property.

{¶11} The parties do not contest the validity and enforceability of the antenuptial agreement. In sustaining Duane's objection to the magistrate's finding regarding the mortgage reductions on the Harbor Street Property, the trial court, after conducting an independent review, found that under the facts and circumstances of this case, the antenuptial agreement mandated that any non-passive appreciation in either of the parties' separate property remain separate. As a result, the trial court reversed the magistrate's ruling that found the appreciation in the value of the corporation, due to satisfaction of the mortgages on the Harbor Street Property, was marital property.

{¶12} The parties' antenuptial agreement provided, in relevant part, that Duane's interest in the "Shares of Stock of Burdick & Lauer Plumbing and Heating Inc." and in the real property at "228 Harbor Street Conneaut, OH" is the "sole and separate property of Duane R. Burdick. Lori K. Barringer hereby disclaims any and all right, title, and interest therein arising by operation of the intended marriage of the parties except as such may be granted to her by this agreement."

{¶13} The trial court properly applied this provision of the antenuptial agreement to the mortgage reductions. While the provisions do not specifically provide that Lori waived interest in the mortgage reductions on the real property, it is clear the parties intended that Lori would have no interest in the corporation or any interest in any future increase in the value of the corporation. Any appreciation of the business would be

4

Duane's separate property by the plain terms of the agreement. As the trial court noted in its entry of November 21, 2012, the mortgages were "paid off in full by the Company during the course of the marriage from the business' accounts."

{¶14} Lori's references to the application of R.C. 3105.171(A)(3) and (6) are unpersuasive; those sections establish how to determine what constitutes separate or marital property in the absence of an antenuptial agreement. Marital property does include income and appreciation with regard to separate property "due to the labor, monetary, or in-kind contribution of either or both the spouses that occurred during the marriage." R.C. 3105.171(A)(3)(a)(iii). However the "income and appreciation" referred to in the statute is included in Lori's antenuptial waiver of "all right, title and interest" in Duane's corporation. Therefore, the statute simply does not apply.

{¶15} The magistrate's focus on the distinction of passive versus active appreciation is likewise inapplicable because this is clearly a business asset, and there was a waiver of all right, title, and interest in the asset. Therefore, the trial court properly assessed that the appreciated value of the business due to the mortgage reductions was separate property.

{¶16} On appeal, Lori argues that the facts of this case are similar to those in *Polakoff v. Polakoff*, 11th Dist. Trumbull No. 98-T-0163, 2000 Ohio App. LEXIS 3542. In *Polakoff*, this court stated that "the plain language of R.C. 3105.171(A)(3)(a)(iii) unambiguously indicates that when *either* spouse makes a labor, money, or in-kind contribution that results in an increase in the value of separate property, that increase is deemed marital property." *Id*. at *11, citing *Middendorf v. Middendorf*, 82 Ohio St.3d 397, 400 (1998). However, in *Polakoff*, the trial court concluded that the antenuptial

5

agreement was fair and equitable only to a limited extent. Therefore, in deciding that the reductions in the mortgage in question were marital property, the trial court applied R.C. 3015.171 rather than the parties' antenuptial agreement. Here, the validity of the antenuptial agreement was not in dispute. Accordingly, the issue of whether the mortgage reductions were the result of Duane's "labor, money, or in-kind contribution" was not relevant to the trial court, because the mortgages were clearly paid by the corporation with corporation assets.

{¶17} Accordingly, Lori's first assignment of error is not well taken.

{¶18} Lori's second and final assignment of error states:

{¶19} "The trial court erred in overruling the objection by Plaintiff-Appellant to the Magistrate's Decision of November 23, 2011."

{¶20} This assignment of error also involves the classification of property as marital or separate under R.C. 3105.171. The same manifest weight standard of review applies as under the first assignment of error. In the event of a factual dispute, the trial court's factual findings regarding the classification of property as marital or separate are reviewed to determine whether they are supported by competent, credible evidence. *Golick v. Golick*, 12th Dist. Clermont Nos. CA99-05-040 & CA99-05-045, *2*001 Ohio App. LEXIS 5626, *13 (Dec. 17, 2001).

{¶21} Under her second assignment of error, Lori argues the trial court erred in determining that Duane's business inventory was separate property based upon the parties' antenuptial agreement. In Ohio, public policy allows for the enforcement of antenuptial agreements. *Gross v. Gross*, 11 Ohio St.3d 99 (1984), paragraph one of the syllabus.

6

> Such agreements are valid and enforceable (1) if they have been entered into freely without fraud, duress, coercion, or overreaching; (2) if there was full disclosure, or full knowledge and understanding of the nature, value and extent of the prospective spouse's property; and (3) if the terms do not promote or encourage divorce or profiteering by divorce.

*Id.* at paragraph two of the syllabus. In *Gross*, the Ohio Supreme Court defined fraud, duress, coercion, and overreaching according to their generally-accepted meanings. *Id.* at 105.

{¶22} Lori argues that Duane did not fully disclose the full nature of his assets in Burdick & Lauer Plumbing and Heating Inc. However, the record contains evidence that Lori fully understood the nature of Duane's business assets. Lori and Duane lived together for approximately two years prior to their marriage. During this time, Lori completed Duane's tax returns and was also responsible for the bookkeeping for Duane's business. There is no suggestion in the record of fraud in failure to disclose assets that would prevent enforcement of the antenuptial agreement.

{¶23} Lori further argues that the business inventory was not referred to in the antenuptial agreement. The magistrate, relying on the antenuptial agreement, found the business inventory was Duane's separate property. The trial court agreed and subsequently overruled Lori's objection to the magistrate's decision.

{¶24} On November 6, 2010, an appraisal was performed on the business inventory, furniture, fixtures, and equipment at the site of Duane's plumbing business. The appraisal estimated the market value of these at $69,700. The items with the highest value were six vehicles used by Duane in the plumbing business. Lori argues that because the vehicles were titled to Duane personally, they should be considered

7

marital property. Duane paid for the vehicles through the separate business accounts. After the loans were fully paid, Duane then transferred the titles to his business.

{¶25} Lori contends that the property included in the appraisal is marital property. Lori bases her argument on *Hyslop v. Hyslop*, 6th Dist. Wood No. WD-01-059, 2002-Ohio-4656, ¶20, which held "that to prevent non-passive increases in separate property from being denominated 'marital' property, an antenuptial agreement should contain more specific terms referring to the future of that property." In *Hyslop*, the court found that because the wife made both monetary and physical improvements to the marital home, there was some competent, credible evidence to support that the appreciation in the value of the marital home was due to the wife's efforts. *Id.* at ¶25. In this case, the magistrate found Lori waived any interest in the equipment and inventory of Duane's business by waiving any interest in Duane's stock of Burdick & Lauer Plumbing and Heating Inc., of which Duane had full control. As such, by operation of the antenuptial agreement, the inventory was clearly separate property at the time of the marriage. Furthermore, the magistrate considered the fact that there was no evidence that the value of equipment and inventory owned by the business increased during the parties' marriage. The magistrate's decision that Duane's business inventory was separate property, and the trial court's overruling of Lori's objections to that finding, are supported by competent, credible evidence. Accordingly, the facts in this case are readily distinguishable from *Hyslop*, where the wife made both monetary and physical improvements to the marital home.

{¶26} Duane's 100-percent stock ownership must include the business's physical inventory, including the six motor vehicles, which were fully paid for using

8

business revenue and eventually titled to the business. The fact that the vehicles were initially titled to Duane, and not to his business, does not alter our conclusion that Lori waived any interest in Duane's business assets. The vehicles were initially titled to Duane apparently only to meet certain lending requirements. Duane traced each payment made on the six vehicles as having been made with funds from his separate business property.

{¶27} As such, Lori's second assignment of error is not well taken.

{¶28} Duane's first assignment of error on cross-appeal states:

{¶29} "The trial court erred in upholding the magistrate's determination that the de facto termination of marriage date was March 31, 2010."

{¶30} The magistrate's decision used March 31, 2010, as the de facto end date of the marriage, rather than the date of the final hearing for divorce. As a result of using March 31, 2010, as the de facto date to determine an equitable division of marital property, Duane claims he was denied the benefit of a more favorable property distribution.

{¶31} In determining the end date of a marriage, R.C. 3105.171(A) provides:

> (2) 'During the marriage' means whichever of the following is applicable:
>
> (a) Except as provided in division (A)(2)(b) of this section, the period of time from the date of the marriage through the date of the final hearing in an action for divorce or in an action for legal separation;
>
> (b) If the court determines that the use of either or both of the dates specified in division (A)(2)(a) of this section would be inequitable, the court may select dates that it considers equitable in determining marital property. If the court selects dates that it considers equitable in determining marital property, 'during the marriage'

9

means the period of time between those dates selected and specified by the court.

Thus, a trial court should only apply a de facto date of termination for the marriage when the court finds it would be inequitable to use the date of final hearing. *Berish v. Berish*, 69 Ohio St.2d 318, 320 (1982).

**{¶32}** The decision to apply a de facto end date of a marriage is reviewed for an abuse of discretion. *Id.* at 321.

**{¶33}** Here, the magistrate determined it was inequitable to use the date of the final hearing as the date of termination of the marriage. In reaching this decision, the magistrate considered when Duane moved out of the marital residence and when Duane stopped making financial contributions to Lori.

**{¶34}** Duane contends the magistrate failed to consider the fact that Duane and Lori were still co-obligors on the mortgage of the marital residence and that Duane continued to pay for Lori's health insurance up to the date of the final hearing. However, the record establishes that the magistrate did consider the parties' living situation, their financial situation, and the business activities of both parties. As a result, we cannot say the trial court abused its discretion in adopting the magistrate's decision to apply a de facto date of termination. Duane's first assignment of error lacks merit.

**{¶35}** Duane's second and final assignment of error on cross-appeal states:

**{¶36}** "The trial [court] failed to make an equitable division of the marital property."

**{¶37}** Duane's second assignment of error on cross-appeal contains four sub-issues:

10

[1.] The Magistrate overstated the 'marital assets' awarded to Husband by $134,393.

[2.] The Magistrate understated the value of the marital home awarded to Wife-Appellant by $38,000.

[3.] The Magistrate overstated the value of the marital asset awarded to Husband-Appellee by $134,393.

[4.] The Magistrate incorrectly found that Wife-Appellant's savings account at Port Conneaut Credit Union was not marital property.

The first and third sub-issues are considered together, as they make the same argument, to wit: the magistrate overstated the value of marital assets awarded to him.

**{¶38}** It appears from the record that after the trial court sustained Duane's objection to the magistrate's holding that the non-passive increases in the business's value are marital property, the trial court did not recalculate total marital assets and then make an equitable division of marital assets.

**{¶39}** In a divorce action, the domestic relations court is required to determine whether property is separate or marital and to divide both marital and separate property equitably. R.C. 3105.171(B). Marital property is to be divided equally in general, and each spouse is considered to have contributed equally to the acquisition of marital property. R.C. 3105.171(C)(1)-(2). However, marital property does not include separate property. R.C. 3105.171(A)(3)(b). Under R.C. 3105.171(A)(6)(a)(v), separate property includes any real or personal property that is excluded by a valid antenuptial agreement. Thus, Ohio law allows for property that is normally considered marital to be excluded from a division of marital property by a valid antenuptial agreement. *Todd v. Todd*, 10th Dist. Franklin No. 99AP-659, 2000 Ohio App. LEXIS 1929, *13 (May 4, 2000).

11

**{¶40}** The magistrate's decision found the value of the total marital assets was $708,410. The magistrate then allocated the marital assets between Duane and Lori. Lori was allocated assets worth $401,215, while Duane was allocated assets worth $307,195. To equalize the division of assets, the magistrate ordered Lori to make a payment of $47,010 to Duane. The marital assets distributed to Duane by the magistrate included the reductions in two mortgages on the Harbor Street Property. These two mortgage reductions amounted to $134,393 and, together, represented the largest asset distributed to Duane in the division of assets.

**{¶41}** In its November 21, 2012 judgment entry, the trial court sustained Duane's objection to the magistrate's decision to include the mortgage reductions in the equitable distribution of marital assets. The trial judge held that the $104,393 for the original mortgage on the Harbor Street Property and the later mortgage reduction in the amount of $30,000 are Duane's separate property. As such, these mortgage reductions were removed from the division of marital assets and awarded to Duane as separate property. However, the trial court did not make a new division of the marital assets. As a result, the total marital assets were reduced to $573,822—$401,215 distributed to Lori and $172,802 distributed to Duane. Furthermore, there was no adjustment in the $47,010 equalizing payment that Lori was ordered to pay to Duane.

**{¶42}** Trial courts are "given broad discretion to fashion a decree that is equitable under the facts and circumstances of each case." *Guziak v. Guziak*, 80 Ohio App.3d 805, 811 (9th Dist.1992). Thus, we will only reverse a trial court's equitable division and distribution of property if the trial court abused its discretion. *Crawford v.*

12

*Crawford*, 11th Dist. Ashtabula No. 90-A-1555, 1991 Ohio App. LEXIS 6340, *5 (Dec. 31, 1991).

**{¶43}** It is not clear whether the trial court would find that a simple recalculation would result in the "equitable" division of marital and separate property as required by R.C. 3105.171. Therefore, this matter is remanded to the trial court to allow it to make such a determination.

**{¶44}** The first and third sub-issues under Duane's second assignment of error on cross-appeal are well taken to the extent that there must be a determination of an equitable division of marital and separate property based on the decision of the trial court relative to the mortgages.

**{¶45}** The second sub-issue concerns the value of the marital home awarded to Lori. Duane contends the magistrate understated the value awarded to Lori by $38,000. Duane does not challenge the home's appraisal; rather, he challenges the magistrate's decision that Duane did not apply any separate funds when paying for the home.

**{¶46}** The magistrate gave credit to Lori for $32,000—the amount she used from her separate property toward construction of the marital home—in the form of a reduction in the equity of the house. Duane was not given a similar credit because he was unable to trace the $20,000 he claims to have contributed from his separate property. However, the magistrate's decision did consider the source of the $20,000 Duane contributed to the marital home:

> When called on cross-examination, Duane Burdick testified that the $20,000 he contributed were funds he saved during the course of the marriage, 'just as though hers was.' Later, testifying on direct examination, Mr. Burdick contradicted his earlier testimony. He testified that the $20,000 he contributed for the construction of the house came from items 3(f) and 3(g) listed in the antenuptial

13

agreement as his separate property. Item 3(f) was a savings account at Port Conneaut Credit Union with a balance of $8,000, and Item 3(g) was a $10,000 certificate of deposit at Port Conneaut Credit Union. Mr. Burdick presented no documentation tracing these funds. Given his contradictory testimony and his failure to trace the funds through documentation, the Magistrate finds that Mr. Burdick failed to prove that the $20,000 he contributed to the construction of the home came from his separate property.

{¶47} Unlike Duane, Lori was able to trace the separate money she contributed towards the home's construction. To trace the property, Lori put forth bank records that clearly trace separate money applied to the home's construction. The magistrate determined that Lori was able to prove by a preponderance of the evidence that the money applied to the home was traceable, separate property, while Duane was not. As a result, we defer to the magistrate's factual determination that the marital equity in the home was $157,000, as it was supported by competent, credible evidence.

{¶48} The fourth and last issue under Duane's second assignment of error on cross-appeal concerns Lori's savings account at Port Conneaut Credit Union. Duane contends the magistrate incorrectly found that the savings account was not marital property.

{¶49} R.C. 3105.171 codifies the concept of traceability, i.e., the "source of funds" rule. *Frederick v. Frederick*, 11th Dist. Portage No. 98-P-0071, 2000 Ohio App. LEXIS 1458, *28 (Mar. 31, 2000). "The commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." R.C. 3105.171(A)(6)(b). In *Frederick*, at *27-28, we further stated:

> The act of commingling is no longer determinative. Instead, the traceability of separate property is the paramount concern. In

14

enacting R.C. 3105.171, the General Assembly was codifying the view that if the right to hold separate property is to be meaningful, then the classification of property as marital or nonmarital must be determined by the source of contributions. Therefore, the only scenario by which transmutation may still occur under the current provisions of R.C. 3105.171 is a situation wherein a spouse is not able to trace his or her separate property. [Internal citations omitted.]

{¶50} On April 1, 2010, the balance in Lori's account at Port Conneaut Credit Union was $49,798. The magistrate found that the entire amount was Lori's separate property. The magistrate fully traced the $49,798 of separate property. First, the magistrate attributed $26,500 to money from inheritances. Indeed, Duane conceded this amount in his closing argument. An additional $22,205 was properly traced to the sale of Lori's separate property. Finally, the antenuptial agreement provided that $13,500 in Lori's Port Conneaut Credit Union account was separate property. As the remaining $1,043 was less than the $13,500 she started with, this balance was properly found by the magistrate to be separate property. Based on this record, we find that the magistrate properly determined that the funds in Lori's Port Conneaut Credit Union account were traceable to her prior owned assets and, therefore, separate property. The fourth issue under Duane's second assignment of error on cross-appeal is without merit.

{¶51} Duane's second assignment of error has merit to the extent indicated.

{¶52} This matter is affirmed in part, reversed in part, and remanded for the trial court to make an equitable division of the marital and separate property consistent with this opinion.

THOMAS R. WRIGHT, J., concurs,

DIANE V. GRENDELL, J., concurs in part and dissents in part with a Dissenting Opinion.

_____

DIANE V. GRENDELL, J., concurs in part and dissents in part with a Dissenting Opinion.

{¶53} I respectfully dissent from the majority's affirmance of the trial court's decision with respect to the issues raised by Lori Burdick on appeal, and concur with the majority's affirmance with respect to the issues raised by Duane Burdick on cross-appeal.

{¶54} Lori Burdick challenged the trial court's decision to deny her credit for active appreciation on Duane Burdick's separate property and to deny her an interest in certain vehicles purchased by Duane Burdick during the marriage for use in his plumbing business. The majority affirms the trial court on both issues based on the parties' antenuptial agreement. Since the antenuptial agreement does not cover active appreciation or business inventory, the lower court should be reversed on these issues.

{¶55} It is generally recognized by courts interpreting antenuptial agreements that "to prevent nonpassive increases in separate property from being denominated 'marital' property, an antenuptial agreement should contain more specific terms referring to the future of that property." *Hyslop v. Hyslop*, 6th Dist. Wood No. WD-01-059, 2002-Ohio-4656, ¶ 20; *compare Hahamovitch v. Hahamovitch*, 133 So.3d 1008, 1013 (Fla.App.2014) ("[w]here a prenuptial agreement does not address the right to

16

enhanced value of a non-marital asset, that value is subject to equitable distribution")
(citation omitted).

{¶56} The relevant provision of the antenuptial agreement in the present case
provides:

> The property described in paragraph 1, subparagraphs a(3) [stock
> in Burdick & Lauer Plumbing] and a(4) [real property associated
> with Burdick & Lauer Plumbing] of this agreement shall be [the] sole
> and separate property of Duane R. Burdick.  Lori K. Barringer
> hereby disclaims any and all right, title, and interest therein arising
> by operation of the intended marriage of the parties except as such
> may be granted to her by this agreement or by any subsequent
> instrument executed by Duane R. Burdick.

{¶57} The majority acknowledges that the agreement's provisions "do not
specifically provide that wife waived interest in the mortgage reductions on the real
property."  *Supra* at ¶ 13.  That being so, the agreement should not be construed to
include what it did not include.

{¶58} Such a conclusion is consistent with the case law.  In *Hyslop*, the following
language was found inadequate to exclude the active appreciation of separate property:
"during the lifetime of the other * * * take claim, demand, or receive, * * * and waive and
release, all rights, claims, titles, interests, * * * in which either might have by reason of
their marriage to each other."  2002-Ohio-4656, at ¶ 13.  In *Wolf-Sabatino v. Sabatino*,
10th Dist. Franklin No. 10AP-1161, 2011-Ohio-6819, the language in the antenuptial
agreement defining separate property included "[a]ny increase, accretion, or earnings of

17

property separately owned before the marriage" and was found adequate to exclude the active appreciation of separate property. *Id.* at ¶ 17, 23.

{¶59} The majority further finds the language of the antenuptial agreement sufficient to waive Lori Burdick's interest in the plumbing company's business assets. The antenuptial agreement does not refer to the company's physical assets, but only to stock and real estate. Business inventory is a separate and distinct asset from either stock ownership or real estate, just as an asset acquisition is separate and distinct from a share acquisition. Thus, Lori Burdick's waiver of any interest in the company's stock and real estate has no bearing on her interest in the company's physical assets. *In re HSM Kennewick, L.P.*, 347 B.R. 569, 571 (Bankr.N.D.Tex.2006) ("[i]t is an elementary principle of corporate law that a corporation and its stockholders are separate entities and that title to corporate property is vested in the corporation and not in the owners of the corporate stock"); *In re Lindermann*, 20 B.R. 826, 828 (Bankr.W.D.Wash.1982) ("[a]n individual shareholder has no property interest in its physical corporate assets").

{¶60} In the present case, the trial court found that Duane Burdick purchased six motor vehicles personally and paid for them during the course of the marriage. As such, they are properly marital property. They should be considered a capital contribution to the company from the marital estate, and Lori Burdick has an interest in the value of the vehicles. The fact that the vehicles were paid for with "business revenue" does not alter this conclusion, inasmuch as the revenue was earned or generated during the course of the marriage.

{¶61} With respect to the foregoing assignments of error, I dissent and would reverse the decision of the trial court. In all other respects, I concur in the majority's judgment.